**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Andrea AIELLO a/k/a Antonio Aiello, Francesca Bartolotta and Lorenzo Scaduto, Defendants-Appellants.**

**No. 525, Docket 86–2236.**

United States Court of Appeals, Second Circuit.

Argued Dec. 11, 1986.

Decided March 18, 1987.

William E. Lore, Forest Hills, N.Y., for defendant-appellant Andrea Aiello.

Martin Ozer, New York City, for defendant-appellant Francesca Bartolotta.

Michael Ricci, Whitestone, N.Y., for defendant-appellant Lorenzo Scaduto.

Julie Copeland, Asst. U.S. Atty., E.D. N.Y. (Andrew J. Maloney, U.S. Atty., E.D. N.Y., David V. Kirby, Emily Berger, Asst. U.S. Attys., E.D.N.Y., of counsel), for plaintiff-appellee United States of America.

Before OAKES, CARDAMONE and DAVIS,* Circuit Judges.

CARDAMONE, Circuit Judge:

Loyalty of a lawyer to his client's cause is the *sine qua non* of the Sixth Amendment's guarantee that an accused is entitled to effective assistance of counsel. Because defense counsel are best positioned to know when a conflict exists or will likely develop during the course of trial, the initial responsibility for preventing the erosion of a client's rights rests on the lawyer's shoulders. This appeal raises questions concerning whether in this case that duty was adequately discharged.

## I. BACKGROUND

Andrea Aiello, Francesca Bartolotta and Lorenzo Scaduto appeal from the disposition of their Fed.R.Crim.P. 33 motion for a new trial, which the district court treated as an application for a writ of habeas corpus, 28 U.S.C. § 2255, and denied. Appellants' claims arising from their convictions on heroin importation and distribution charges have been previously considered and affirmed on direct appeal in *United States v. Aiello*, 771 F.2d 621 (2d Cir.1985). On the present appeal appellants assert that their trial attorneys had conflicts of interest that deprived them of effective assistance of counsel in derogation of their Sixth Amendment rights. Although the district court reviewed all the affidavits submitted on this issue, it denied the application without a hearing. Because we think that appellants are entitled to a fuller inquiry into their claim, the order denying the writ is reversed and the matter is remanded to the district court for further proceedings. Appellant Scaduto also appeals the denial of his Fed.R.Crim.P. 35(a) motion to correct his sentence. Finding no merit to his claim, we affirm.

### A. *Facts*

A brief summary of background facts is necessary. Federal and state agents arrested Lorenzo Scaduto, Andrea Aiello, Salvatore Bartolotta, and Filippo Ragusa in September 1983. Ragusa is the father of appellant Francesca Bartolotta, wife of Salvatore Bartolotta, and Maria Scaduto, wife of appellant Lorenzo Scaduto. Francesca Bartolotta was arrested and indicted sever-

---

* Honorable Oscar H. Davis, U.S. Circuit Judge for the Federal Circuit, Washington, D.C., sitting by designation.

al months later. Shortly after the initial arrests, the two sisters—Francesca and Maria—asked Mr. Evseroff to represent all of those arrested on drug charges. He agreed to represent Francesca's husband Salvatore and recommended a number of lawyers to represent the other defendants. Among these were Mr. Jeffrey A. Rabin, who later became Francesca Bartolotta's trial counsel and Mr. Arnold Taub, who represented appellant Andrea Aiello at trial. Attorney Evseroff, in an affidavit, states that shortly after Salvatore Bartolotta's arrest and indictment by a New York State Grand Jury he was asked to represent Bartolotta in the state proceeding. Once Bartolotta was severed from the original federal charge, Mrs. Scaduto and Mrs. Bartolotta then asked Evseroff to represent Lorenzo Scaduto on the federal charge. Attorney Evseroff further states that attorney Rabin was retained to assist him in representing Scaduto on the federal charges. Neither attorney indicates in their affidavits *who* retained attorney Rabin. In addition to appearing for Scaduto, Mr. Rabin states that he made appearances for Salvatore Bartolotta in the state proceeding. Thus, at the end of 1983, Mr. Rabin was assisting Mr. Evseroff in his representation of Salvatore Bartolotta and Lorenzo Scaduto.

When appellants' trial began in March 1984 Evseroff continued to represent Salvatore Bartolotta and Scaduto, Mr. Rabin represented Mrs. Bartolotta, and Mr. Taub defended Aiello. Evseroff's affidavit merely states that "it was decided that Mr. Rabin ... would represent Francesca Bartolotta." Mr. Rabin's affidavit does not indicate whether he was still consulting with her husband when he undertook Mrs. Bartolotta's defense. No dates are provided.

### B. *Alleged Areas of Conflict of Interest*

There are two areas of disagreement between the affidavits submitted by appellants and the attorneys' affidavits furnished by the government—each area raises the possibility of a conflict of interest. The first area of an alleged conflict of interest is the failure to call Salvatore Bartolotta to testify. This conflict of interest contention centers on attorney Jacob Evseroff who served as Scaduto's trial counsel. Mr. Evseroff also represented Francesca Bartolotta's husband, Salvatore, who was an unindicted co-conspirator in his wife's federal trial and a defendant in state court for his part in the heroin scheme. Appellants assert that Evseroff failed to call his client Salvatore Bartolotta to testify in appellants' federal trial because he put Bartolotta's interests above their interests. Trial counsel representing the other appellants also failed to call Bartolotta as a witness because these lawyers were controlled, appellants allege, by attorney Evseroff.

Appellants insist that they wanted Salvatore Bartolotta to testify. Scaduto and Aiello state that they asked their attorneys to call him, and Francesca Bartolotta indicates that she discussed this possibility with Mr. Rabin. In their affidavits attorneys Evseroff, Taub, and Rabin aver that their respective clients did not wish them to call Bartolotta as a witness.

The affidavits submitted in support of the appellants' applications suggest a reason for the failure to call Salvatore Bartolotta. Scaduto, Aiello, Maria Scaduto, and Rosa Ragusa—another daughter of Filippo Ragusa and sister of Maria Scaduto and Francesca Bartolotta—all claim that Mr. Evseroff stated that he would not call Bartolotta because he would get "50 years to life" for the charges he was facing in state court if he testified in the federal case. Francesca Bartolotta attributes that same statement to attorney Rabin. Mr. Evseroff responds to that claim by stating that he discussed the possibility of Bartolotta testifying with Scaduto and Francesca Bartolotta and that they vociferously opposed it. Mr. Taub states that he never heard Mr. Evseroff state that Salvatore Bartolotta would get more time if he testified. Attorney Rabin admits discussing with Francesca Bartolotta the possible consequences of her husband's testifying, but denies stating that Salvatore Bartolotta would receive "50 years" if he did in fact testify. Moreover,

attorneys Taub and Rabin cite tactical considerations for not having Bartolotta testify. Finally, Salvatore Bartolotta himself states in his affidavit that he was willing to testify, if called, but does not indicate what his testimony would have been.

The affidavits differ most sharply in the second area where there is a claimed conflict of interest. That alleged conflict concerns counsel fees. While Maria Scaduto and attorneys Taub and Evseroff agree that Maria Scaduto was the ultimate source of the money paid to the trial attorneys, they disagree as to the amount of fees paid and how the fees were paid. Maria Scaduto claims that she gave Mr. Evseroff $500,000 to pay for Evseroff's representation of both Lorenzo Scaduto and Salvatore Bartolotta, and for the services of the other attorneys. She further claims that Mr. Evseroff told her that the money would be distributed among the other attorneys, and informed her of what attorneys Rabin's and Taub's fees would be as part of that distribution. Her affidavit is silent as to who would make the distribution.

Mr. Evseroff denies that the aggregate fee for all the lawyers amounted to "anything approximating" $500,000. He does acknowledge that Maria Scaduto brought cash to his office for distribution and that the money was distributed according to each lawyer's fee arrangement. But he does not indicate who effected the distribution. Nor does Mr. Evseroff explain how he knew that the money was distributed according to each lawyer's fee arrangement, when he was ignorant of what those arrangements were. Contradicting Maria Scaduto, Mr. Taub claims that she paid him directly on several occasions.

The final point of disagreement involves the alleged withholding by attorney Evseroff of legal fees for Mr. Rabin, Mr. Taub, and other defense counsel. Maria Scaduto and Francesca Bartolotta both state that they had a September 1984 conversation with Mr. Rabin in which he is supposed to have said that Mr. Evseroff had withheld some of the money provided by Maria Scaduto. In response, the government produced a letter from attorney Rabin to an As-

sistant United States Attorney in which he denied making those statements. Because both Mr. Taub's and Mr. Evseroff's affidavits preceded the particular affidavits in which Scaduto and Bartolotta make this particular assertion, the attorneys' affidavits do not directly address it. Nonetheless, Mr. Taub's and Mr. Evseroff's various statements concerning the payment of fees are implicit denials of Scaduto's and Bartolotta's statements.

Faced with these conflicting sworn statements, the district court denied appellants' application without a hearing. The trial court held that the appellants had either failed to allege or establish an actual conflict of interest sufficient to qualify as an actual conflict of interest adversely affecting counsel's performance. From this disposition an appeal was taken.

## II.  ALLEGED CONFLICT OF INTEREST CLAIMS

### A.  *Standards For Assessing*

The standard for assessing whether an attorney's conflict of interest renders his assistance ineffective is set forth in *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). "In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 350, 100 S.Ct. at 1719. In examining this question, we consider first whether the district court had a duty under either Fed.R. Crim.P. 44(c) or the Constitution to inquire at the time of trial into Mr. Evseroff's representation of Scaduto and Salvatore Bartolotta.

■ Appellants' argument that the trial court erred in failing to conduct a hearing into Mr. Evseroff's dual representation as required by Rule 44(c) is misplaced. The language of Rule 44(c) itself indicates that a hearing is required only in cases where defendants have been "jointly charged" or "joined for trial." The Advisory Committee Note accompanying the Rule confirms this: "Rule 44(c) establishes a procedure for avoiding the occurrence of events which

might otherwise give rise to a plausible post-conviction claim that because of joint representation the defendants in a criminal case were deprived of their Sixth Amendment right to the effective assistance of counsel." Fed.R.Crim.P. 44(c) Advisory Committee Note. Moreover, appellants do not point to—nor has research uncovered— any case where a court has applied Rule 44(c) when one attorney represents two defendants—one of whom is a potential witness in the trial of the other—in two different forums.[1] Thus, we conclude that in this instance the trial court had no duty under Rule 44(c) to conduct an inquiry.

■ The Sixth Amendment also imposes a duty upon a trial court to inquire when it "knows or reasonably should know that a particular conflict exists." *Cuyler*, 446 U.S. at 347, 100 S.Ct. at 1717. Appellants argue that there were three separate occasions when Mr. Evseroff indicated that he was representing both Bartolotta and Scaduto. Yet, taken together these instances were insufficient to alert the trial court to a possible conflict of interest. First, attorney Evseroff's remarks made it clear that Bartolotta and Scaduto were facing *separate* proceedings. *See Cuyler*, 446 U.S. at 347, 100 S.Ct. at 1718 ("The provision of separate trials for [the petitioner] and his codefendants significantly reduced the potential for a divergence in their interests."); *Mosier v. Murphy*, 790 F.2d 62, 65 (10th Cir.1986) (following *Cuyler* ). Second, the attorney's comments indicated that Bartolotta's and Scaduto's interests converged, rather than diverged, on the particular issue that Evseroff was raising before the court. *Cuyler* instructs that the consistency or compatibility of co-defendants' defenses is a factor to be considered in determining whether the trial court had notice of a potential conflict. *See Cuyler* at 347, 100 S.Ct. at 1717. Finally, appellants did not object at trial to the dual representation. *See id.* at 347, 100 S.Ct. at 1717. Thus, we conclude that the district court

was not obliged by *Cuyler* to conduct an inquiry at the trial.

## B. *Dismissal Without A Hearing*

Even without an affirmative duty to inquire at trial, the relevant question on this appeal becomes: Should the district court have denied the appellants' post-trial application without further inquiry? While it would go too far to say that it was error for the district court to have failed to conduct a full evidentiary hearing; nevertheless, it was not an appropriate case for summary dismissal of the petition. The language of § 2255 states that "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing." 28 U.S.C. § 2255 (1982). As a result, we look with disfavor on summary rejection of a habeas petition when it is supported by a *"sufficient* affidavit." *Dalli v. United States*, 491 F.2d 758, 760 (2d Cir.1974) (emphasis in original).

■ When considering a § 2255 habeas application the supporting affidavits must be examined first. Opposing affidavits should also be considered in order to test the sufficiency of the petitioner's allegations, but not for finding them false. *See, e.g., Machibroda v. United States*, 368 U.S. 487, 495, 82 S.Ct. 510, 514, 7 L.Ed.2d 473 (1962); *United States v. Franzese*, 525 F.2d 27, 30–31 (2d Cir.1975), *cert. denied*, 424 U.S. 921, 96 S.Ct. 1128, 47 L.Ed.2d 328 (1976). Not every application that is supported by a set of facially meritorious allegations will survive a motion to deny the writ. To warrant plenary presentation of evidence, the application must contain assertions of fact that a petitioner is in a position to establish by competent evidence. *See Machibroda*, 368 U.S. at 495–96, 82 S.Ct. at 514; *Dalli*, 491 F.2d at 761. Whether there is a genuine issue of material fact depends upon the sufficiency of those factual allegations. Airy generalities, conclusory assertions and hearsay statements will not suffice because none of

---

**1.** Appellants also argue that attorneys Rabin and Evseroff were "associated in the practice of law" within the meaning of Rule 44(c). Such a relationship also triggers the requirement for an inquiry. This claim is meritless. There is no evidence suggesting that the trial court should have been aware of this "association" if, in fact, it existed.

these would be admissible evidence at a hearing. *See Franzese*, 525 F.2d at 31. Hence, like a motion for summary judgment in civil cases, both the petitioner's and government's affidavits—taken together—are used to determine the existence of genuine issues of material fact. *See Blackledge v. Allison*, 431 U.S. 63, 80–81, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); 3 C. Wright, *Federal Practice & Procedure*, § 599 at 499 (2d ed. 1982). If the affidavits disclose such material issues, then the application will survive a motion to dismiss and a contrary ruling that summarily disposes of the petition is error. *See Allison*, 431 U.S. at 82–83, 97 S.Ct. at 1633.

■ The affidavits submitted here disclosed genuine issues of material fact that should have been explored further. As noted, they reveal sharp disputes concerning who paid trial counsel, how much such counsel received, whether fees were withheld, and whether the fees were divided as a form of a referral fee. If these questions were resolved in appellants' favor,[2] it would then appear that attorney Evseroff was in a position to control other defense counsel. If that in fact was what occurred, it would be tantamount to his representing all the appellants and constitute, therefore, an impermissible conflict. The other dispute concerns whether Mr. Evseroff had an actual conflict of interest in representing both Scaduto and Salvatore Bartolotta. Again, the affidavits sharply disagree on whether the appellants wanted Salvatore Bartolotta to testify, whether the defense counsel did or did not want him and, if not, why not.

Two other factors persuade us that summary disposition of appellants' application was inappropriate. Appellants have not previously had an evidentiary hearing on this claim, *see Dalli*, 491 F.2d at 761, and the circumstances providing the factual basis for appellants' application occurred outside of the courtroom. Thus, the files and records of the case would be of little or no aid to the trial court in passing on it. *See Machibroda*, 368 U.S. at 494–95, 82 S.Ct. at 513–14.

■ For these reasons, we reverse the district court's order that denied their application for a writ and remand the case for further inquiry into appellants' claims. Of course, such inquiry may take the form of an evidentiary hearing, or the district court, in its discretion, may utilize any of the habeas rules designed to supplement the record without the necessity of conducting a full-blown evidentiary hearing. *See* Rules Governing Habeas Corpus Cases, 28 U.S.C. app. fol. § 2255 (1982). *See also Blackledge*, 431 U.S. at 81–82, 97 S.Ct. at 1632–33 (discussing the advantages of Rules 6 and 7 of the Rules Governing Habeas Corpus for supplementing the record while avoiding the necessity of a hearing).

### III. SCADUTO'S RESENTENCING

■ Scaduto appeals from his resentence by the district court following the disposition of the direct appeal. Scaduto was convicted at trial of conspiracy to import heroin (21 U.S.C. §§ 952, 960, 963), conspiracy to distribute heroin (§§ 841, 846), the substantive crimes of possession of heroin with intent to distribute (§ 841) and importation of heroin (§§ 952, 960), and, managing a continuing criminal enterprise (§ 848). He was sentenced to a 35 year term with a $100,000 fine for the § 848 conviction, a 14 year term and a $25,000 fine for each of the two conspiracy convictions—these terms to run concurrently with each other and consecutively to the § 848 sentence—and a 15 year term and $25,000 fine for each of the two convictions for the substantive crimes, these terms to

---

**2.** The affidavits submitted, including those submitted by counsel, if true, raise disquieting questions about trial counsels' sensitivity to issues of professional responsibility. In addition to the alleged basic conflict of interest, there are questions involving referral fees and fee splitting and withholding. Appellants also cite other unrelated conflicts of interest, such as neglecting to discuss potential conflicts of interest with clients, contacting a defendant without the knowledge or approval of that individual's attorney, and failing to preserve the confidences of a client. The record before us is far too incomplete to reach any conclusions on these allegations, but we note them because they are troublesome ones that may not properly be ignored.

run concurrently to each other, but consecutively to those on the other counts. *See Aiello*, 771 F.2d at 626–27.

On Scaduto's direct appeal we followed the procedure outlined in *United States v. Osorio Estrada*, 751 F.2d 128 (2d Cir.1984), *modified on reh'g on other grounds*, 757 F.2d 27 (2d Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 97, 88 L.Ed.2d 79 (1985), for handling convictions for lesser and greater offenses. Thus, we vacated Scaduto's sentences for the conspiracy convictions and remanded the case to the district court for it to combine those convictions with the continuing criminal enterprise conviction, as well as for resentencing on the latter conviction. *See Aiello*, 771 F.2d at 634. Upon remand, the district court ultimately vacated the conspiracy convictions, thereby effectively combining them with the § 848 conviction, and increased the sentence for the § 848 conviction from 35 to 45 years. The § 848 sentence was concurrent with the sentences for the two substantive counts. As a result of the district court's resentencing, the total sentence imposed on Scaduto was reduced.

The exact ground of Scaduto's challenge to the district court's action is unclear. Presumably appellant objects to the increase in the sentence on the § 848 conviction following the combination of it with the conspiracy convictions. If this is the objection, it is groundless. We have previously approved an increase of a § 848 sentence after a conspiracy conviction has been combined with it. *See United States v. Mourad*, 729 F.2d 195, 203–04 (2d Cir.), *cert. denied*, 469 U.S. 855, 105 S.Ct. 2700, 86 L.Ed.2d 717 (1984). *See also United States v. Grayson*, 795 F.2d 278, 287 (3d Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 927, 93 L.Ed.2d 978 (1987) (district court may increase sentence for § 848 conviction following vacation of conspiracy conviction).

## CONCLUSION

Accordingly, the judgment denying appellants' relief under 28 U.S.C. § 2255 is reversed and remanded for further proceedings on the conflict of interest claims.

The order denying Scaduto's motion to be resentenced is affirmed.

Reversed and remanded in part.

Affirmed in part.