UNITED STATES of America

v.

**Andrea AIELLO, a/k/a Antonio Aiello and Lorenzo Scaduto, Petitioners.**

No. 83–CR–429.

United States District Court, E.D. New York.

Feb. 29, 1988.

Andrew J. Maloney, U.S. Atty. by Gregory J. O'Connell, Asst. U.S. Atty. U.S. Dept. of Justice, Brooklyn, N.Y., for U.S.

William E. Lore, Forest Hills, N.Y., for petitioner Andrea Aiello.

Michael Vincent Ricci, Whitestone, N.Y., for petitioner Lorenzo Scaduto.

## MEMORANDUM AND ORDER

WEINSTEIN, Chief Judge:

Defendants Andrea Aiello, Lorenzo Scaduto, and Francesca Bartolotta were convicted in July of 1984 following trial on various charges of importation and distribution of heroin and conspiracy to import and distribute heroin. Five other defendants were acquitted. The conviction was affirmed on direct appeal in *United States v. Aiello*, 771 F.2d 621 (2d Cir.1985).

Defendants then moved for a new trial in February of 1986 based on the alleged discovery of new evidence tending to prove prejudicial attorney conflicts of interest. The district court treated the motion as a writ of habeas corpus, 28 U.S.C. § 2255, and denied it without a hearing. The Court of Appeals reversed the denial on the ground that the appellants were entitled to a fuller inquiry into their claim, and remanded the matter to the district court for further proceedings. *United States v. Aiello*, 814 F.2d 109 (2d Cir.1987). The trial judge then recused himself and the matter was assigned to another judge by random selection.

Ms. Bartolotta subsequently withdrew her petition. She had already been released from incarceration.

## I. *Facts*

Federal and state agents arrested Mr. Scaduto, Mr. Aiello, and Salvatore Bartolotta in September 1983 in connection with a heroin importation and distribution scheme. Filipo Ragusa, whom agents believed to be the ringleader of the operation, escaped arrest and remains a fugitive. Ms. Bartolotta and Rita Volpe were arrested and indicted several months later. A superceding indictment filed in February, 1984 named Mr. Scaduto, Mr. Aiello, Mr. Ragusa, Ms. Volpe, Ms. Bartolotta, and five others in various counts of heroin importation and distribution and conspiracy. Federal charges were dropped against Mr. Bartolotta, who had originally been indicted in the federal proceeding; he was charged in state court and convicted there upon a plea together with another implicated person, one Charles Salemi.

Most of these defendants are closely related or socially connected. Mr. Ragusa is the father of Francesca Bartolotta, wife of Salvatore Bartolotta, and of Maria Scaduto, wife of Lorenzo Scaduto. Defendant Michael Ducato is Mr. Aiello's nephew. Defendants Domenico Logalbo and Pietro Graffeo are godfathers to one another's children. Mr. Logalbo and Mr. Ragusa are cousins. Ms. Volpe is Mr. Ragusa's girlfriend. Defendant Michele Altamura was Mr. Ragusa's landlord.

Shortly after the initial arrests, the two sisters—Francesca and Maria—approached Jacob Evseroff, Esq., and asked him to represent all of those who had been arrested in connection with the drug ring. He agreed to represent Mr. Bartolotta, and recommended a number of other attorneys to represent the other defendants. After federal charges were dropped against Mr. Bartolotta, the two women asked Mr. Evseroff to represent Mr. Scaduto, which he agreed to do, while at the same time continuing to represent Mr. Bartolotta in the state proceeding.

Among the attorneys to whom Mr. Evseroff referred the other defendants were Jeffrey Rabin, Esq. Arnold Taub, Esq., Raymond Sussman, Esq., and Maria Candelaria, Esq. Mr. Rabin was in effect, if not in name, of counsel to Mr. Evseroff in his defense of both Mr. Bartolotta in the state proceeding and Mr. Scaduto in the federal proceeding; Mr. Taub was retained to represent Mr. Aiello; Mr. Sussman represented Mr. Logalbo; and Ms. Candelaria represented Ms. Volpe. Mr. Rabin, Mr.

Sussman, and Ms. Candelaria shared Mr. Evseroff's office suite at the time of trial. Mr. Rabin had worked for Mr. Evseroff until 1985 in the law firm of Evseroff & Sonenshine, and although the employment relationship was officially discontinued at that time, Mr. Rabin continued to receive from Mr. Evseroff a $400 minimum weekly stipend, free office space, free secretarial services, and telephone privileges in exchange for services provided to Mr. Evseroff. Paul Auerbach, Esq., who was appointed by the court as counsel for the indigent co-defendant Angelo Golio, moved into Mr. Evseroff's suite a month after the district court trial ended.

At the time Ms. Scaduto and Ms. Bartolotta agreed to retain Mr. Evseroff and the other attorneys, they allegedly brought a bag of cash to Mr. Evseroff's suite which they intended for him to distribute to co-counsel. Ms. Scaduto alleges that all fees were thereafter paid only to either Mr. Evseroff or Mr. Rabin, although Mr. Taub states that he was paid directly on several occasions. Mr. Rabin stated in his deposition that the cash brought to Mr. Evseroff's suite was distributed among co-counsel by separating it into piles containing bills of various denominations, each fastened with a rubber band and marked with a slip of paper containing an attorney's name.

The trial resulted in the conviction of Mr. Aiello, Mr. Scaduto, and Ms. Bartolotta and the acquittal of five other defendants. The charges against Ms. Volpe were dismissed on a Rule 29 motion. All of those who were acquitted had taken the stand, and those who were convicted had not. Neither Mr. Bartolotta, Mr. Salemi, or Ms. Volpe were called to testify for any of the defendants.

The chart below outlines the relationships among the defendants and the disposition of their cases:

### DEFENDANTS CHARGED IN FEDERAL COURT

| Defendant | Relationship to Other Defendants | Attorney | Status |
| --- | --- | --- | --- |
| Filipo Ragusa | Father of Francesca Bartolotta; father-in-law of Salvatore Bartolotta and Lorenzo Scaduto | None | Fugitive |
| Lorenzo Scaduto | Son-in-law of Filipo Ragusa; brother-in-law of Salvatore and Francesca Bartolotta | Evseroff | Convicted |
| Andrea Aiello | Uncle of Michael Ducato | Taub | Convicted |
| Domenico Logalbo | Godfather of Pietro Graffeo's children; Cousin of Filipo Ragusa | Sussman | Acquitted |
| Pietro Graffeo | Godfather of Domenico Logalbo's children | Carnesi | Acquitted |
| Michele Altamura | Landlord of Filipo Ragusa | Lombardino | Acquitted |
| Michael Ducato | Nephew of Andrea Aiello | Burke | Acquitted |
| Angelo Golio | None indicated | Auerbach | Acquitted |
| Francesca Bartolotta | Wife of Salvatore Bartolotta; daughter of Filipo Ragusa | Rabin | Convicted |
| Rita Volpe | Girlfriend of Filipo Ragusa | Candelaria | Dismissed |
| Salvatore Bartolotta | Husband of Francesca Bartolotta; son-in-law of Filipo Ragusa | Evseroff | Pleaded in State Court |

The trial court was not informed that (1) several of the co-defendants' attorneys were sharing office space, (2) the fees of all defense counsel were for the most part being drawn from cash distributed by Mr. Evseroff; (3) defense counsel had been selected on Mr. Evseroff's recommendation; or (4) Mr. Evseroff and Mr. Rabin were involved in the defense of Mr. Bartolotta in state court.

## II. *Issues for Review*

The court of appeals outlined two major areas of conflict of interest. The first involves petitioners' accusations of corruption stemming from the manner in which counsel fees were distributed. Defendants claim that the fee arrangement allowed Mr. Evseroff to control co-counsel both by giving him excessive input into who was to be appointed to represent the co-defendants, and by allowing him to use the threat of withholding fees as leverage to ensure that co-counsel cooperated with his chosen defense strategy throughout the trial. There was also disagreement regarding the amount of the original lump sum payment —Ms. Scaduto claims that it was $500,000, while Mr. Evseroff claims that it was substantially less—and regarding the defendants' allegations that Mr. Evseroff's co-counsel paid kickbacks to Mr. Evseroff in exchange for the referrals. The court of appeals presented this issue in terms of four factual questions to be resolved on remand: who paid trial counsel, how much counsel received, whether fees were withheld, and whether fees were divided as a form of referral fee. *See* 814 F.2d at 112, 114.

A second issue revolves around allegations that Mr. Evseroff's joint representation of Mr. Bartolotta and Mr. Scaduto, coupled with his alleged control over the other defendants' attorneys, resulted in none of the attorneys being willing to call Mr. Bartolotta as a witness at trial. The evidence is in conflict over whether the defendants wanted Mr. Bartolotta to testify: Mr. Scaduto and Mr. Aiello insist that they asked their attorneys to call him but that Mr. Evseroff refused because Mr. Bartolotta might get "50 years to life," while

Mr. Evseroff and Mr. Taub aver that their clients did not want Mr. Bartolotta to take the stand. None of the petitioners' affidavits indicate what Mr. Bartolotta's testimony would have been, and the attorneys cite tactical reasons for the failure to call him as a witness. The specific questions which the court of appeals ordered decided on remand are whether petitioners wanted Mr. Bartolotta to testify, and whether the defense counsel did or did not want him to testify, and if not, why not. *See* 814 F.2d at 111–12, 114.

At the hearing, petitioners added to their claims by contending that their sixth amendment rights were violated by certain other lapses in the quality of their defense, among them (1) the failure of Mr. Evseroff to call Ms. Volpe as a defense witness for Mr. Scaduto, allegedly because of her knowledge of Mr. Ragusa's whereabouts; (2) failure of either attorney to call as a witness Mr. Salemi, who had pleaded guilty in state court; (3) failure of both Mr. Evseroff and Mr. Taub to move to supress an incriminating videotape showing heroin transactions taking place in Mr. Aiello's warehouse in Buffalo; (4) failure of either attorney to make a speedy trial motion; (5) failure of either attorney to allow his client to testify on his own behalf; (6) failure to introduce into evidence alternative versions of translations of certain wiretap transcripts, although the defense attorneys had access to such alternative versions; (7) inadequate cross-examination and summation on matters involving Mr. Ragusa and Mr. Bartolotta; and (8) failure of either attorney to make written post-conviction motions.

Finally, petitioners claim that Mr. Evseroff failed to inform them of prior investigations of him for possible conflicts of interest in a number of other criminal matters. They argue the investigations in those matters—among them *United States v. Tortorello* (E.D.N.Y. 80–CR–574), *United States v. Cancilla*, 725 F.2d 867 (2d Cir.1984), and *United States v. Gambino* (D.N.J. 84–CR–98)—establish that such conflicts were a general practice in Mr. Evseroff's office.

### III. Standard for Assessing Conflicts of Interest

■ In its decision remanding the petitioners' case for hearing, the Court of Appeals reiterated the standard for assessing conflicts of interest established in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). There the Supreme Court held that "[i]n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." (Footnote omitted.) This standard has been interpreted to require that a defendant show first, that some plausible defense tactic or strategy might have been pursued but was not, and second, that this defense was inherently in conflict with counsel's other loyalties. *See, e.g., Oliver v. Wainwright*, 782 F.2d 1521 (11th Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 313, 93 L.Ed.2d 287 (1986); *United States v. Fahey*, 769 F.2d 829 (1st Cir. 1985). When failure to undertake a possible line of defense constitutes a realistic tactical choice rather than a reflection of loyalty to another client, the failure does not establish the basis for a claim of ineffective assistance of counsel. *See, e.g., Smith v. Regan*, 583 F.2d 72 (2d Cir.1978); *Perez v. Harris*, 459 F.Supp. 1141 (S.D.N.Y.1978), *aff'd*, 603 F.2d 214 (2d Cir.1979). Thus, in the case at bar, since the petitioners did not raise their conflict of interest claims at trial, they must show both that the defense tactics which were not pursued, including the calling of Salvatore Bartolotta as a witness, would have been plausible in light of surrounding circumstances, and that counsel's failure to employ them was a result either of the alleged unethical fee or other arrangements or of loyalty to Mr. Evseroff's other client, Mr. Bartolotta.

### IV. Findings of Fact

■ The trial judge, who had the opportunity to evaluate the effect of counsel's conduct based on first-hand knowledge, concluded in his memorandum and order dated June 6, 1986 that no violation of defendants' sixth amendment rights had occurred as a result of a conflict of interest. All of the evidence taken in connection with the hearing after remand supports his conclusion. Although the conduct of the defense attorneys at times created the appearance of impropriety, petitioners have failed to establish the existence of an actual conflict of interest in accordance with the *Cuyler* standard.

The mere possibility that a conflict may have affected a defendant's representation is insufficient to impugn a criminal conviction. *Cuyler*, 446 U.S. at 350, 100 S.Ct. at 1719. The petitioners have shown that some potential conflicts existed, and have also set forth a number of plausible defense tactics that might have been pursued and were not, but they have failed to show that these alleged facts were or could have been in any way connected. None of the defense strategies which could actually have been pursued would have worked adversely to the interest of some clients but not others, and thus none of these alleged lapses could logically have resulted from counsel's favoring one client over another. The few defense tactics suggested by petitioners which might have resulted in a conflict could not in any event realistically have been used at trial. Beyond a reasonable doubt, no conflict and no action or inaction of trial counsel complained of by petitioners had any effect on the outcome of the case.

### A. Issues Regarding Counsel Fees and their Effect on Relationships Among Co-counsel

■ Mr. Taub, who represented defendant Aiello, was not under the control of Mr. Evseroff as the petitioners have claimed. He made decisions on behalf of Mr. Aiello wholly independent of any relationship with other attorneys, including Mr. Evseroff, despite the fact that his fee was paid in cash which had originally been delivered to Mr. Evseroff. Mr. Evseroff controlled neither the selection of attorneys nor the allocation of fees. There was no fee splitting, and Mr. Evseroff did not withhold any forewarding fee or kickback for himself before delivering Mr. Taub's fee as defendants have alleged. Cash turned over to Mr.

Evseroff for distribution to the other attorneys was turned over in exactly the form and amount decided upon by the clients. Mr. Evseroff's fee was $75,000, of which he received $50,000, an appropriate amount in light of the complexity and length of the trial. Other attorneys received somewhat lesser fees commensurate with their experience.

Undoubtedly Mr. Evseroff and Mr. Taub conferred during the course of the representation regarding defense strategy and fees. Such communication among co-counsel is normal and to be expected in a complex, multi-defendant case such as this one. The fee arrangement, although somewhat unconventional, is understandable in view of the fact that most of the defendants were related. The rules of legal ethics and representation should not be interepreted so as to divorce them from the practical needs and desires of the clients they are designed to protect.

Mr. Taub was operating independently of Mr. Evseroff. Thus, any failure on the part of Mr. Taub to employ available defenses could not have resulted from Mr. Evseroff's alleged conflict of interest.

### B. Failure of Mr. Bartolotta and Other Potential Witnesses to Testify

■ All defendants and all counsel were informed and aware of the fact that Mr. Evseroff had represented Mr. Bartolotta in related state court proceedings and of the resulting potential conflict that might inhibit their defense. All defendants, particularly Mr. Evseroff's own client, insisted emphatically that he continue to represent them despite any such conflict.

Mr. Bartolotta's failure to testify was not attributable to a conflict of interest on the part of counsel. Petitioners' argument on this issue is supported only by the bald assertion of Mr. Bartolotta that he would have testified if he were called—without any indication of what he would have said—coupled with the retrospective assertions of the petitioners and their co-defendants that they wanted him to take the stand. Such paltry evidence is inadequate to demonstrate that calling Mr. Bartolotta would have been a plausible defense tactic—the first prong of a showing of actual conflict of interest. Petitioners' similar assertions regarding counsel's failure to call Ms. Volpe or Mr. Salemi, and the accusation that their cross-examination and summation on matters involving Mr. Ragusa and Mr. Bartolotta was intentionally weak, are supported by even less evidence.

All of the evidence taken together indicates that the decision to keep Mr. Bartolotta off the stand was the result of plausible tactical considerations in which both Mr. Scaduto and Mr. Aiello concurred. Messrs. Evseroff, Taub, Rabin, and Sussman each stated emphatically that Mr. Bartolotta had no credibility as a witness following the disclosure at trial that he had conducted a major heroin deal in his car while in the company of his two children. There is every indication that all the defendants concurred in the decision not to call him. Mr. Evseroff states in his deposition that Mr. Scaduto was "dead set against it." The testimony and other depositions support this conclusion.

### C. Other Inadequacies in Representation Alleged by Petitioners

■ There is no reason to rule on whether the alleged failure of defense counsel to pursue various other potential arguments and motions resulted in a denial of petitioners' rights, because we find that no such omission could logically have been related to a conflict of interest. Mr. Evseroff's decisions not to move to suppress an incriminating videotape, "allow" the defendants to testify on their own behalf, introduce his own translations of tape transcripts, or make a speedy trial motion could not conceivably have inured to the benefit of any of his other clients. We note nevertheless that petitioners' counsel appear to have met minimum standards of competency. The case was a difficult one, and nothing they did or failed to do would have had any appreciable effect on the verdict. The evidence against their clients was quite strong. The tactical decisions in context were sound. Making fruitless motions and arguments could have served no useful purpose.

### D. Prior Investigations of Mr. Evseroff

With regard to the petitioners' claim that Mr. Evseroff's conduct in prior cases establishes a pattern of representation of conflicting interests, the court notes the disturbing nature of this alleged pattern. Nevertheless, the overwhelming weight of evidence in the instant case indicating the lack of any actual conflict clearly outweighs the evidence suggesting that the alleged pattern of conflicts could have had any appreciable effect on the petitioners' trial. There is not the slightest evidence that Mr. Evseroff pulled punches in defense of his client to curry favor of the prosecutor in order to avoid prosecution for his own alleged delicts.

### E. Evidence Considered by the Court

In reaching these findings, this court has considered extensive testimony presented over a period of three days, as well as briefs submitted by the petitioners and the government, affidavits of the petitioners' attorneys, depositions of the defendants' attorneys, and portions of the record in the case at bar and in the prosecution of Mr. Bartolotta in state court. We find that the affidavits, depositions, and testimony of Mr. Evseroff and other defense counsel are credible and consistent with the trial record, and that the affidavits of the petitioners are not.

### V. *Suggestions for the Future*

Although the petitioners have failed to meet their burden of demonstrating an actual conflict of interest which adversely affected counsel's performance in accordance the *Cuyler* standard, counsel's conduct and methods of operation cannot be approved. Much of it resulted in an appearance of impropriety and should be avoided in the future. Faith of defendants and the public in the legal system would be enhanced, and unnecessary litigation avoided, were counsel to adhere to the following guidelines:

1. Payment of fees to independent counsel should be made directly and not by lump-sum payment to be distributed by one attorney to co-counsel. Fee-splitting and use of referral fees without the explicit consent of the client is always improper. Where an attorney is paid by the court for representing an indigent client, the court's permission must be obtained for any diversion of the fee.

2. An attorney who works in another attorney's office, whether as partner, associate, or co-tenant should be treated as a partner for the purpose of evaluating a possible conflict.

3. Representation of another party in any arguably related case in the same or another court, whether state of federal, should be treated as if it were a representation of that party in all related cases for purposes of determining whether there exists a conflict of interest.

4. Counsel should make known to the client all possible conflicts that might arise. Counsel should make known to the court on the record in the presence of the client all possible conflicts, real or apparent, that might arise. The court will then inquire on the record to ensure that the clients' sixth amendment rights are protected, and a hearing will be held if necessary. Defendant should be present at all relevant proceedings to ensure that she or he understands the nature of the possible conflict and its consequences.

5. Counsel are reminded that the practice of receiving large payments in cash may present civil and criminal issues that are beyond the scope of the questions posed by the court of appeals in this case. The court makes no findings with respect to the implication that delivery of the fees to Mr. Evseroff in the form of bags of cash constituted a method of money laundering. This is, however, an issue the bar may wish to address along with other issues raised in this memorandum in order to avoid future problems.

### Conclusion

The petition to set aside the judgements of conviction is denied. 28 U.S.C. § 2255. A certificate of probable cause is granted.

So ordered.