Bernard CULLEN, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

Docket No. 98–2329.

United States Court of Appeals,
Second Circuit.

Argued Sept. 1, 1999.

Decided Oct. 22, 1999.

Cheryl J. Sturm, Westtown, Pa., for plaintiff-appellant.

Gregory L. Waples, Asst. U.S. Atty., Burlington, VT. (Charles T. Tetzlaff, U.S. Atty., David V. Kirby, Crim. Div., Burlington, VT., on the brief), for appellee.

Before: NEWMAN, CARDAMONE, and JACOBS, Circuit Judges.

JON O. NEWMAN, Circuit Judge.

This appeal primarily presents the issue of whether a district judge, considering a report and recommendation of a magistrate judge who observed a witness and credited the witness's key testimony, may reject that testimony on credibility grounds without holding a hearing and assessing the witness's credibility. Bernard Cullen appeals from the March 25, 1998, order of the United States District Court for the District of Vermont (J. Garvan Murtha, Chief Judge), denying his motion, filed pursuant to 28 U.S.C. § 2255, to vacate a sentence imposed after a jury

convicted him of drug distribution offenses. The motion alleged that his trial counsel rendered ineffective assistance by not informing him of the details of a plea bargain and not advising him whether to accept it. Magistrate Judge Jerome J. Niedermeier, after hearing Cullen's testimony and that of his trial counsel, concluded that defense counsel had rendered ineffective assistance that prejudiced Cullen and recommended granting the section 2255 motion. Without hearing any testimony, Chief Judge Murtha rejected the recommendation, ruling that Cullen would not have accepted the plea bargain and therefore was not prejudiced. We conclude that the District Judge was not entitled to reject the Magistrate Judge's proposed finding of prejudice without hearing Cullen's testimony and making a credibility determination. We therefore vacate the order and remand for a hearing.

## Background

*Indictment, trial, and sentencing.* A grand jury indicted Cullen on one count of conspiracy to distribute cocaine and four counts of distribution of cocaine. After a jury trial, Cullen was convicted on all five counts. District Judge Franklin S. Billings, Jr., sentenced him to concurrent terms of 136 months, determined as follows. The base offense level of 28 (3.06 kilograms of cocaine) was increased two levels for obstruction of justice because Judge Billings concluded that Cullen had lied in his trial testimony; an acceptance of responsibility reduction was denied; the resulting offense level of 30, combined with Criminal History Category III, yielded a sentencing range of 121 to 151 months. The 136–month sentence was the midpoint of this range. This Court affirmed by summary order. *See United States v. Chase,* 23 F.3d 396 (2d Cir.1994) (table).

*The section 2255 proceedings.* Cullen filed a motion to vacate his sentence under section 2255, contending that his trial counsel had rendered ineffective assistance. The Magistrate Judge held a hearing, heard testimony from Cullen and his court-appointed defense counsel, and issued a Report and Recommendation with the following findings.

The defense counsel told Cullen, a year before the trial, that under the Sentencing Guidelines his sentencing exposure, based on his criminal history category and the weight of the cocaine, was approximately 57 to 71 months with a five-year mandatory minimum. This estimate was never revised. Three weeks before trial, the Government sent defense counsel an unsolicited written plea agreement under which Cullen would agree to plead guilty to the conspiracy count in exchange for the Government's promise (a) not to oppose a two-level downward adjustment for acceptance of responsibility and (b) to recommend a sentence at the bottom of the applicable Guidelines range. Defense counsel called Cullen and told him that the Government had sent him a plea agreement, but did not tell him the terms of the agreement. Defense counsel explained that he did not communicate the terms of the agreement nor advise Cullen whether to plead guilty because Cullen had adamantly professed his innocence and had never indicated any willingness to plead guilty, and because he believed that Cullen was innocent. Defense counsel did tell Cullen that one of the indicted co-conspirators and another (unindicted) co-conspirator would testify against him, that the Government would present two tapes of conversations between him and two other conspirators, and that Cullen could be found guilty. Defense counsel did not tell Cullen that, if he pled guilty under the plea bargain, his sentence, according to the Magistrate Judge, would be approximately 70–78 months[1] and that if convicted after testify-

---

1. The Magistrate Judge might have meant to state that the sentence would have been 70 *or* 78 months. A base offense level of 28 for the 3.06–kilogram quantity, reduced by 2 for acceptance of responsibility, combined with Criminal History Category III, would yield a sentencing range of 78–97 months; with a reduction of 3 levels for acceptance of respon-

ing at trial, his Guidelines range could be 121 to 151 months, his sentence could be enhanced if the sentencing judge concluded that his trial testimony was false, and he could lose a reduction for acceptance of responsibility. Instead, defense counsel led Cullen to believe that his sentence would be about the same whether he accepted the plea agreement or was convicted at trial.

The Magistrate Judge concluded that defense counsel had rendered ineffective assistance in failing to offer any advice as to whether to accept the plea bargain and in failing to explain the substantial difference between the likely sentencing ranges upon conviction after trial and upon a guilty plea. This deficiency, he ruled, satisfied the first prong of the test for a Sixth Amendment violation—that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Turning to the second prong, whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052, the Magistrate Judge noted that "Cullen testified that if [defense counsel] had discussed the sentencing guidelines he would have pleaded guilty and taken at least the five-year mandatory minimum instead of taking the chance on the possibility of a 121–151 months guideline range." Magistrate's Report and Recommendation 12.[2] Crediting this testimony, the Magistrate Judge concluded that defense counsel's deficient representation had prejudiced Cullen. He therefore recommended that the District Court grant Cullen's motion to vacate his sentence and permit Cullen to replead to the indictment.[3]

The District Court, without taking testimony, rejected the recommendation of the Magistrate Judge, ruling that Cullen had "failed to show a reasonable probability that he would have ceased proclaiming his innocence and accepted a plea agreement which would have resulted in a certain, five-year sentence." District Court Order at 3. The Court pointed out that the Magistrate Judge had explicitly declined to credit Cullen's claims that his attorney had not mentioned the plea agreement to him and had not discussed the Sentencing Guidelines with him. The Court also relied on Cullen's insistence, both at trial and at the section 2255 hearing, that he was innocent. Thus concluding that the prejudice prong of *Strickland* had not been satisfied, the Court denied the section 2255 motion.

### Discussion

To be entitled to relief, Cullen must show that defense counsel's representation "fell below an objective standard of reasonableness," *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052.

*Deficient representation.* Though the District Court did not disturb the findings of the Magistrate Judge concerning the deficiencies in defense counsel's representation, the Government contends that the

---

sibility, the sentencing range would be 70–87 months. Perhaps the Magistrate Judge, mindful of the Government's willingness to recommend a sentence at the bottom of the applicable sentencing range, meant to state that the sentence, under the plea agreement would have been at the bottom of either of these two ranges.

2. On direct examination by his current lawyer, Cullen testified, "I think if I knew what I was going to get, eleven years instead of five,

I'm sure I could have—I could have been persuaded to take a plea agreement." Pressed by the Government on cross-examination as to whether he would have pled guilty despite his claimed innocence, Cullen testified somewhat more definitely, "Yes, I probably would have...."

3. In view of our disposition of this appeal, we have no occasion to consider what the appropriate remedy would be if Cullen's motion were granted.

duty of reasonable representation was not breached. The Government contends that counsel "communicated the Government's plea offer to Cullen, discussed with him the merits of the Government's case, and discussed alternatives to standing trial." Brief for Appellee at 20. This significantly overstates what occurred. Though defense counsel testified that he communicated the *fact* of an offered plea bargain, he acknowledged that he failed to inform his client of the *terms* of the bargain. Moreover, he estimated that the Guidelines range upon a guilty plea would be approximately the same as upon conviction after trial, whereas the range under the plea agreement would have been 78 to 97 months[4] and upon conviction after trial would· likely be (and was) 121 to 151 months. Finally, defense counsel offered no advice as to whether the plea bargain should be accepted.

We recently considered whether defense counsel renders ineffective assistance when he fails to give his client any advice as to the acceptance of a plea bargain offered by the prosecution. *See Boria v. Keane,* 99 F.3d 492, 496–97 (2d Cir.1996), *clarified with respect to another issue and reaff'd on reh'g,* 90 F.3d 36 (2d Cir.1996).[5] In that case, the defendant had proclaimed his innocence to his lawyer, the prosecution had offered a plea bargain with a sentence of one to three years, and, without the plea bargain, the defendant faced sentencing for a Class A–I felony, *see Boria,* 99 F.3d at 494–95, for which the minimum term of imprisonment is 15 to 25 years and the maximum term is life (Boria received a sentence of 20 years to life, *see id.* at 494). *See* N.Y. Penal Law § 70.00(2)(a), (3)(a)(1) (McKinney 1998). We ruled that failure to give any advice concerning acceptance of the plea bargain

was below the standard of reasonable representation. *See Boria,* 99 F.3d at 496–97.

■■■ *Boria* recognizes a lawyer's general duty to advise a defendant concerning acceptance of a plea bargain. " 'A defense lawyer in a criminal case has the duty to advise his clientfully on *whether a particular plea to a charge appears to be desirable.'* " *Boria,* 99 F.3d at 496 (emphasis in *Boria* ) (quoting *Model Code of Professional Responsibility* EC 7–7· (1992)); *see Von Moltke v. Gillies,* 332 U.S. 708, 721, 68 S.Ct. 316, 92 L.Ed. 309 (1948) ("[A]n accused is entitled to rely upon his counsel . . . to offer his informed opinion as to what plea should be entered."). Even if there might be circumstances where defense counsel need not· render advice as to acceptance of a plea bargain, there can be no doubt that counsel must always communicate to the defendant the terms of any plea bargain offered by the prosecution. In this case, the failure to do so was aggravated by the absence of any advice concerning the plea bargain and the significantly inaccurate calculation of sentencing ranges upon a plea and upon conviction after trial. *See United States v. Gordon,* 156 F.3d 376, 380 (2d Cir.1998) (counsel's incorrect estimate of 120–month maximum sentence, upon conviction, was deficient representation where actual sentence range was 262 to 327 months). The representation provided by Cullen's defense counsel was plainly deficient.

■■■ *Prejudice.* The District Judge rejected the Magistrate Judge's recommended finding of prejudice because he concluded that Cullen had not shown the requisite reasonable probability that he would have pled guilty. The District Judge regarded the issue as a matter of

---

**4.** This estimate is based on a base offense level of 28, reduced by 2 levels for acceptance of responsibility, combined with Criminal History Category III.

**5.** The *Boria* opinion was initially filed on May 3, 1996, corrected on May 21 and July 11, 1996, and refiled and reissued on October 25,

1996. The clarifying opinion, concerning the non-retroactivity of the AEDPA, was filed on July 17, 1996, thereby resulting in publication of the clarification in a volume of the Federal Reporter that precedes the volume containing the October 25 corrected version of the main opinion.

law, stating that the Government had not contested the Magistrate Judge's findings of fact. Though the ultimate determination of prejudice under *Strickland* may be regarded as an issue of law, that issue will almost always involve an application of the legal standard of prejudice to the particular facts of a case, thereby presenting what is sometimes unhelpfully called a mixed question of fact and law. In this case, the determination of the likelihood that Cullen would have accepted the plea bargain if he had been fully informed of its terms and accurately advised of the likely sentencing ranges under the plea bargain and upon conviction after trial was, like all predictions of what might have been, a factual issue, albeit a hypothetical one. Moreover, the Government's objections to the Report and Recommendation of the Magistrate Judge had disputed the factual predicate of the Magistrate Judge's ultimate conclusion of prejudice, *i.e.,* that there was a reasonable probability that Cullen would have accepted the plea bargain.

The District Judge cited two considerations to support his essentially factual determination that Cullen, properly represented, would not have accepted the plea bargain. First, he relied on Cullen's sustained proclamations of innocence, before and during the trial and continuing through the section 2255 hearing before the Magistrate Judge. Second, he pointed out that the Magistrate Judge had not credited Cullen's claims that his defense counsel had not even mentioned the plea agreement to him nor discussed the Sentencing Guidelines with him. Though these considerations might weigh against an ultimate finding of a reasonable probability that Cullen would have accepted the plea bargain, the Court's reliance on them to reject the Magistrate Judge's recommended ruling raises a substantial procedural issue: whether, without hearing a witness, a district judge may make a credibility finding, contrary to the recommended finding of a magistrate judge who heard the witness.

*Rejecting a proposed credibility finding.* A district court has authority pursuant to 28 U.S.C. § 636(b)(1)(B) to appoint a magistrate judge to conduct evidentiary hearings and to submit proposed findings of fact and recommendations on applications for posttrial relief. Under that provision, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* § 636(b)(1).

Neither the Supreme Court nor this Court has considered a case where a district judge rejected a credibility finding of a magistrate judge without hearing the witness whose testimony was disputed or at least affording that witness an opportunity to testify. Nevertheless, language in several opinions strongly indicates that, in the *de novo* determination required by section 636(b)(1) when requested, such rejection must normally include hearing the disputed testimony. Thus, the Supreme Court, in its first discussion of the matter, stated:

> Neither the statute [the Federal Magistrates Act] nor its legislative history reveals any specific consideration of the situation where a district judge after reviewing the record in the process of making a *de novo* "determination" has doubts concerning the credibility findings of the magistrate. The issue is not before us, but we assume it is unlikely that a district judge would *reject* a magistrate's proposed findings on credibility when those findings are dispositive and substitute the judge's own appraisal; to do so without seeing and hearing the witness or witnesses whose credibility is in question could well give rise to serious questions which we do not reach.

*United States v. Raddatz,* 447 U.S. 667, 681 n. 7, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (emphasis in original); *see id.* at

692, 100 S.Ct. 2406 (Stewart, J., dissenting) ("It is thus evident that Congress anticipated that occasions would arise when a district judge could not make the requisite 'de novo determination' without hearing the evidence himself.") (footnote omitted).

*Raddatz* considered a Magistrate Judge's recommendation concerning a motion to suppress, and the Court subsequently reiterated the caution of footnote 7 in the context of a Magistrate Judge's supervision of jury selection:

> Although there may be other cases in which *de novo* review by the district court [without hearing witnesses whose credibility is disputed] would provide an inadequate substitute for the Article III judge's actual supervision of the *voir dire,* the same is true of a magistrate's determination in a suppression hearing, which often turns on the credibility of witnesses. See *Raddatz,* 447 U.S. at 692, 100 S.Ct. 2406 (Stewart, J., dissenting). We presume, as we did in *Raddatz* when we upheld the provision allowing reference to a magistrate of suppression motions, that district judges will handle such cases properly if and when they arise. See *id.,* at 681, n. 7, 100 S.Ct. 2406.

*Peretz v. United States,* 501 U.S. 923, 939, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991).

Our Court first encountered the issue in *Grassia v. Scully,* 892 F.2d 16 (2d Cir. 1989), a habeas corpus proceeding in which the District Judge rejected proposed findings of the Magistrate Judge after hearing testimony from the two witnesses whose credibility was disputed. We emphasized the importance of the District Judge's hearing such testimony:

> Had the district judge rejected the magistrate's conclusions regarding the credibility of the central witnesses without hearing live testimony from those witnesses, troubling questions of constitutional due process would have been raised. . . . When the constitutional rights of a criminal defendant

are involved, "the district judge should not enter an order inconsistent with the credibility choices made by the magistrate without personally hearing the live testimony of the witnesses whose testimony is determinative."

*Id.* at 19–20 (quoting *Louis v. Blackburn,* 630 F.2d 1105, 1109 (5th Cir.1980)).

Similarly, in *United States v. Rosa,* 11 F.3d 315 (2d Cir.1993), we upheld the District Judge's rejection of the Magistrate Judge's proposed ruling on a suppression motion because the District Judge had heard the testimony of the key witnesses. We observed that a district judge who rejects a magistrate judge's determination based on credibility assessments "need hear testimony from only the witnesses whose credibility is in question." *Id.* at 329.

Our most recent encounter with the issue occurred in *United States v. Taylor,* 92 F.3d 1313 (2d Cir.1996), in which the District Judge had rejected the Magistrate Judge's allowance of a peremptory challenge exercised by defense counsel. The Magistrate Judge had concluded that the challenge, though admitted by defense counsel to have been based on the juror's race, would have been exercised on the ground that the juror "had long been out of the workplace and had not been exposed to a broad range of opinions." *Id.* at 1327. We upheld the District Judge's seating of the juror despite the fact that the defendants' attorneys had not testified before the Judge as to the allegedly legitimate reason on which they would have challenged the juror. Acknowledging that the circumstances "may not have been optimal," *id.,* we did not fault the District Judge's procedure because (a) defense counsel had been before the District Judge, (b) they had an opportunity to be heard, and (c) they had submitted to the Judge their affirmation acknowledging that their peremptory challenge was based on race. Moreover, the District Judge's

disallowance of the peremptory challenge appeared to rest less on a disbelief of counsel's statement as to what they would have done had race not been the basis of their challenge, and more on their failure to "explain[ ] why such a juror would be either more or less desirable in this case." *Id.*

From these decisions, it appears that a district judge should normally not reject a proposed finding of a magistrate judge that rests on a credibility finding without having the witness testify before the judge. Other circuits are in agreement. *See Hill v. Beyer,* 62 F.3d 474, 482 (3d Cir.1995) (in state prisoner's habeas action District Court erred in rejecting, without evidentiary hearing, Magistrate Judge's findings based on credibility determinations); *Louis v. Blackburn,* 630 F.2d 1105, 1109–10 (5th Cir.1980) (District Court cannot reject Magistrate Judge's finding based on credibility of witness that is dispositive of application for post-conviction relief without personally hearing live testimony from witnesses whose testimony is in issue); *cf. Wildermuth v. Furlong,* 147 F.3d 1234, 1236 (10th Cir.1998) (when party files objections to Magistrate Judge's credibility findings, *de novo* hearing not required if District Court *adopts* Magistrate Judge's findings). Accordingly, we hold that, without an evidentiary hearing, the District Court could not reject the Magistrate Judge's proposed credibility finding regarding a reasonable probability that Cullen would have accepted the plea bargain if fully informed.

The Government seeks to avoid the need for any further hearing as to whether Cullen would have accepted the plea bargain because, in its view, Cullen's insistence on his innocence, at trial and even now, precludes a finding of prejudice. Though Cullen's insistence on his innocence is a factor relevant to any conclusion as to whether he has shown a reasonable probability that he would have pled guilty, it is not dispositive. Moreover, if he had been properly informed of the significant difference between the likely sentencing ranges after trial and under the offered plea bargain, Cullen might well have abandoned his claim of innocence.

■ *Remedy.* Cullen contends that, because the District Court rejected the credibility findings of the Magistrate Judge without hearing his testimony, we should reverse and grant the relief that the Magistrate Judge recommended. That course, however, would elevate the recommended ruling of the Magistrate Judge to a final ruling and undermine section 636(b)(1)'s requirement of a *de novo* determination by the District Court. We reject that course. Instead, we conclude that the proper remedy is to remand for the *de novo* consideration required by section 636(b)(1) and, if the District Court declines to accept any credibility findings made based on live testimony before the Magistrate Judge, that there be an opportunity for Cullen's credibility to be assessed after the District Court has seen and heard him testify.

In determining whether Cullen has shown a reasonable probability that he would have accepted the plea bargain if he had been informed of its terms, the factfinder will primarily have to make a determination of Cullen's credibility. Though a claim that he would have accepted the plea would be self-serving (like most testimony by witnesses who are parties), it ought not to be rejected solely on this account.[6] In assessing Cullen's credibility, the fact-finder would be entitled, but not required, to consider Cullen's continued protestation of

---

6. Juries are regularly given the following instruction concerning the testimony of a defendant testifying in a criminal case:

> In this case, the defendant decided to testify. You should examine and evaluate his testimony just as you would the testimony of any witness with an interest in the outcome of this case. You should not disregard or disbelieve his testimony simply because he is charged as a defendant in this case.

1 L. Sand, *et al., Modern Federal Jury Instructions* ¶7.01 (instruction 7–4) (1998).

innocence as weighing against the credibility of his claim, and to regard the disparity between the guideline range he faced and the range as represented by defense counsel as another factor bearing upon his credibility, *see Gordon,* 156 F.3d at 381 (deeming disparity of 120 months predicted exposure versus 262–327 months actual exposure supportive of credibility). The credibility determination should be based on all relevant circumstances.

In ordering such a remand, we encounter the further procedural issue of whether the hearing should be held by a different district judge. We have no doubt that Chief Judge Murtha could hold the required hearing and fairly make a new assessment of Cullen's credibility, unimpeded by his prior ruling. But in a case of this sort, a concern arises as to the appearance of justice. If Chief Judge Murtha, after hearing Cullen's testimony, were again to conclude that there was not a reasonable probability that Cullen would have accepted the plea bargain, surely Cullen and perhaps others, unaware of Chief Judge Murtha's deserved reputation for fairness, would wonder whether the Judge had permitted his prior ruling to influence his second decision. There are occasions when a matter is appropriately remanded to a different district judge not only in recognition of the "difficulty" that a judge might have "putting aside his previously expressed views," but also "'to preserve the appearance of justice.'" *United States v. Campo,* 140 F.3d 415, 420 (2d Cir.1998) (quoting *United States v. Robin,* 553 F.2d 8, 10 (2d Cir.1977)); *see United States v. Leung,* 40 F.3d 577, 587 (2d Cir.1994) ("Though we believe the District Judge could fairly sentence on remand, just as he undoubtedly did at the original sentencing, the appearance of justice is better satisfied by assigning the resentencing to a different judge."); *United States v. Stein,* 544 F.2d 96, 104 (2d Cir.1976) (same). We think that course is warranted here. Accordingly, we vacate the order of the District Court and remand for further proceedings consistent with this opinion.