Johney PHAM, Petitioner–Appellant,

v.

UNITED STATES of America, Respondent–Appellee.

No. 00–2328.

United States Court of Appeals, Second Circuit.

Argued: Feb. 4, 2002.

Decided: Jan. 15, 2003.

Jeffrey G. Pittell, New York, NY, for Petitioner–Appellant.

William F. Johnson, Assistant United States Attorney for the Southern District of New York (Mary Jo White, United States Attorney, Teresa A. Pesce, Assistant United States Attorney, on the brief) New York, NY, for Respondent–Appellee.

Before: POOLER and SOTOMAYOR, Circuit Judges, and KAPLAN, District Judge.*

Judges SOTOMAYOR and KAPLAN filed separate concurring opinions.

POOLER, Circuit Judge.

Johney Pham appeals from orders filed on April 12, 2000, October 13, 2000, and November 6, 2000, of the United States District Court for the Southern District of New York (Louis L. Stanton, *Judge* ) denying his habeas corpus petition filed pursuant to 28 U.S.C. § 2255. Pham claims that his trial attorney rendered ineffective assistance when he failed to convey a plea offer to Pham. We have in the record below serial submissions from Pham and serial orders from the district court, and this piecemeal litigation has not created a record from which we can determine that denial of Pham's petition was appropriate.

Pham had to show that his attorney's performance was unreasonable considering all of the circumstances and caused Pham prejudice. *See Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). By incorrectly determining that Pham had suffered no prejudice, the district court did not fully develop its reasoning on the issue of counsel's deficient performance, the issue we now see as dispositive. A district court has a wide variety of tools available to it in developing the record during habeas proceedings, yet the district court failed to do so here. *See*

Fed. R. Governing Section 2255 Proceedings 4, 7 and 8. The district court, having presided over Pham's trial and sentencing, also had a close familiarity with the background of petitioner's claims, yet it failed to draw on this knowledge to make explicit its reasons for finding Pham incredible. We remand to allow the district court another opportunity to review the petition.

## BACKGROUND

In October 1995, a trial jury convicted Pham of conspiracy to engage in alien smuggling and hostage taking and conspiracy to receive ransom money, in violation of 18 U.S.C. § 371, conspiracy to commit kidnaping, in violation of 18 U.S.C. § 1201(c), substantive kidnaping, in violation of 18 U.S.C. § 1201(a)(1), receipt of ransom money in connection with a kidnaping, in violation of 18 U.S.C. § 1202, transportation of illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(B), and concealment and harboring of illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(C). The government alleged that Pham and multiple co-defendants participated in a kidnaping and ransom conspiracy beginning in early 1994 in which they smuggled undocumented Chinese immigrants into the United States and then held them hostage while demanding additional payments from the immigrants' families. Nine of the defendants pleaded guilty, two—including Pham—sustained convictions after trial, and two others remained fugitives. On November 12, 1997, the district court sentenced Pham to 210 months imprisonment, three years supervised release and $300 special assessment. On October 1, 1998, we affirmed the conviction and sentence by

---

* The Honorable Lewis A. Kaplan of the United States District Court for the Southern District of New York, sitting by designation.

summary order. *United States v. Wei*, 164 F.3d 620 (2d Cir.1998) (table).

On November 29, 1999, Pham filed in district court a *pro se* habeas corpus petition dated November 2, 1999. The petition raised a number of issues, including a claim of ineffective assistance of trial counsel based on the lawyer's failure to pursue plea negotiations on Pham's behalf. In an affirmation filed with the petition, Pham stated that he asked his attorney, Martin J. Siegel, to seek a plea bargain but "Mr. Siegel never communicated to me about whether he sought the plea negotiation, or what the government might have said on that request." Pham also stated·that he told his lawyer he was willing to plead guilty if he received a sentence of between five and eight years but counsel "never gave [him] an account on whether he approached the government on [his] request, or whether the government said anything on that request."

The district court summarily denied the petition in a memorandum and order dated April 11, 2000. The district court held that, assuming Pham's allegations were true, Pham nonetheless failed to demonstrate that "counsel's performance was outside the wide range of reasonable professional judgment" or that Pham suffered prejudice. On the second point, the district court held that Pham's claim that he would have taken a plea was frivolous in light of his continued insistence on his innocence.

Pham appealed the order and sought a certificate of appealability ("COA") in district court, protesting the court's summary dismissal of his facially valid petition. In a "supplement" to his motion for a COA, Pham informed the district court that he just learned through fulfillment of a Freedom of Information Act request that the government offered co-defendants in his case, including Pham, a global plea bargain but that Pham's lawyer never told Pham about the offer. By letter dated October 7, 2000, the government responded to Pham's supplement and attached an affirmation from Pham's trial counsel. In the affirmation, attorney Siegel stated that he always related plea offers to Pham and discussed them with his client, "but [Pham] always maintained his innocence." Attached to Siegel's affirmation was a copy of June 16, 1995, correspondence in which Siegel sent the government's global plea offer to Pham at the prison in Otisville. In an order dated October 12, 2000, the district court denied Pham's supplement because the government's submission "establishes that his lawyer responsibly and timely brought the government's plea offer to his attention."

Apparently unaware of the district court's latest order, Pham sent a letter to the court dated October 17, 2000. In the letter, Pham claimed that Siegel's affirmation was false and that Pham never received any letters or plea agreements from Siegel while Pham was in Otisville. Pham also denied that Siegel ever visited him at Otisville. According to Pham, the prison's records would demonstrate that Pham never received the letter that Siegel claimed to have sent. Pham also said that he could prove Siegel never visited through prison records and evidence from the interpreter who would have been present during a visit. The district court responded to Pham's letter by denying him a COA or an evidentiary hearing in a memorandum endorsement dated November 2, 2000. In a letter to the district court dated October 30, 2000, Pham—again unaware of the court's order—renewed his request for a hearing or COA and attached an unnotarized statement from a Vietnamese interpreter who said that she "did not accompany Mr. Pham's lawyer or anyone else to FCI Otisville, New York to trans-

late there, or to take and discuss a plea offer to Mr. Pham at FCI Otisville." The district court denied the request on November 21, 2000.

■ By order filed on March 15, 2001, we granted Pham's pending motion for a COA on the single issue of "whether [Pham's] counsel failed to advise him of a plea offer made by the government." Our review of the district court's denial of a hearing on the habeas petition is for abuse of discretion. *Chang v. United States,* 250 F.3d 79, 82 (2d Cir.2001). Because it presents a mixed question of law and fact, the issue of whether defendant's counsel rendered ineffective assistance warrants *de novo* review. *Id.*

## DISCUSSION

Pham on appeal renews his argument that he received ineffective assistance of counsel because his trial lawyer failed to inform him of the government's global plea offer. Petitioner also contends that he was entitled to a hearing on this issue. The government responds that the district court properly denied the petition on the record before it because Pham failed to demonstrate with objective evidence either that his lawyer's performance was deficient or that Pham suffered prejudice.

■ The parties agree on the relevant legal standards. Defendant suffers a Sixth Amendment violation when he receives ineffective assistance of counsel. In order to prove ineffective assistance, Pham must show (1) "that counsel's representation fell below an objective standard of reasonableness"; and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 688, 694, 104 S.Ct. 2052. A defendant suffers a Sixth Amendment injury where his attorney fails to convey a plea offer. Defense counsel have a constitutional duty to give their clients professional advice on the crucial decision of whether to accept a plea offer from the government. *Boria v. Keane,* 99 F.3d 492, 498 (2d Cir.1996). *See also United States v. Gordon,* 156 F.3d 376, 379–80 (2d Cir. 1998) (*per curiam* ). "Even if there might be circumstances where defense counsel need not render advice as to acceptance of a plea bargain, there can be no doubt that counsel must always communicate to the defendant the terms of any plea bargain offered by the prosecution." *Cullen v. United States,* 194 F.3d 401, 404 (2d Cir. 1999).

## I. Prejudice

■ Rather than focusing on the first part of the *Strickland* test, the district court held that Pham failed to show prejudice as the second part of the test requires. Generally, a defendant suffers prejudice if there is a reasonable probability that his reliance on counsel's ineffective assistance affected the outcome of the proceedings. *Gordon,* 156 F.3d at 380. The district court in its November 2 order held that Pham presented no objective evidence other than his self-serving statements that he would have accepted the plea offer. It is true that our precedent requires some objective evidence other than defendant's assertions to establish prejudice. *Gordon,* 156 F.3d at 380–81. However, a significant sentencing disparity in combination with defendant's statement of his intention is sufficient to support a prejudice finding. *Id.* at 381; *see also Mask v. McGinnis,* 233 F.3d 132, 141–42 (2d Cir.2000), *cert. denied,* 534 U.S. 943, 122 S.Ct. 322, 151 L.Ed.2d 240 (2001). Both of these elements are present here.

■ The district court here never considered the undisputed sentencing disparity of at least 113 months between the high

end of the government's plea offer and Pham's sentence after a trial conviction. Instead, the court rejected Pham's statement that he would have accepted a plea offer of five to eight years. The district court held that "[Pham's] assertion that he would have pled guilty is belied by the fact that in his § 2255 motion he still claims he is innocent of the charges." In both its April 11 and November 2 orders, the district court quoted parts of Pham's habeas petition in support of its conclusion. These quotations in context show that while Pham consistently denied participating in the actual kidnaping and abuse, he admitted participating in certain acts of the conspiracy such as renting a truck to transport the aliens in exchange for $5,000 and procuring a handgun. What the district court also failed to acknowledge was Pham's assertion that he was unaware of vicarious liability theories that would allow him to be found guilty of a kidnaping or smuggling conspiracy even if he did not participate in certain acts as the government alleged. Contrary to the district court's assertion, Pham's petition did not present a blanket claim of innocence.

We have held that where the disparity in potential sentences is great, a finder of fact may infer that defendants who profess their innocence still will consider a plea. *Cullen*, 194 F.3d at 405, 407 (holding that district court could not overrule magistrate judge's factual finding on this point without conducting its own hearing). The disparity here was a plea offer of 78 to 97 months and a sentence after trial of 210 months, which is more than double. Our precedent at a minimum indicates that the district court erred in summarily determining the absence of prejudice without even considering the sentence disparity. *Mask*, 233 F.3d at 141–42; *Cullen*, 194 F.3d at 407; *Gordon*, 156 F.3d at 381. This evidence, coupled with the district court's mischaracterization of Pham's peti-

tion, compels reversal on the prejudice prong. We note that Siegel's affirmation does not rebut directly Pham's claims that he was unaware of the sentence disparity or his vulnerability to vicarious liability. Additional evidence therefore was required before the district court could find that Pham would not have pleaded guilty even if he knew of the government's plea offer.

## II. Deficient performance

In its April 11 and November 2 orders, the district court seemed to acknowledge that, taking Pham's allegations as true, defendant satisfied the first part of the *Strickland* standard because Pham's lawyer did not communicate the terms of a plea offer to defendant. There is some subtle confusion on this point due to the piecemeal development of the record and the evolution of Pham's assertions. At the time of the April 11 order, Pham only claimed that his lawyer failed to pursue plea negotiations, and the district court held that failing to pursue a plea was not deficient performance. By the time of the November 2 order, Pham knew that a plea offer had existed and claimed that his attorney never conveyed the offer to him. If there is any question whether failure to *pursue* plea negotiations is deficient performance, *see Brown v. Doe*, 2 F.3d 1236, 1246 (2d Cir.1993), there is no dispute that failure to *convey* a plea offer is unreasonable performance. *Cullen*, 194 F.3d at 404. The distinction between failing to pursue and failing to convey plea offers is immaterial here because the district court also found in its October 12 order that the government established, through the affirmation of Pham's trial counsel, that the "lawyer responsibly and timely brought the government's plea offer to [Pham's] attention." Because it found *Strickland*'s prejudice prong dispositive, the district

court's findings regarding deficient performance are not fully developed.

The government on appeal contends that Pham failed to produce credible, objective evidence in support of his claim. Specifically, the government dismisses Pham's "self-serving, unnotarized, and in many cases unsworn, statements," credits the affirmation from Pham's trial lawyer, criticizes Pham for failing to produce prison records of incoming mail, and discounts the weight of the interpreter's statement because several different interpreters participated in the multi-defendant case. The government's arguments only raise issues of fact that should be the subject of additional inquiry in the district court. The government also attempts to foreclose Pham's arguments by stating that Pham could not have benefitted under the global plea offer because one other co-defendant went to trial. There is evidence, however, that the government did not enforce the "global" provision of its offer because four defendants named in the offer pleaded guilty. We also view as unfair the government's criticism of Pham for not producing prison mail records during proceedings below where the burden of doing so would be far less on the government than a *pro se* incarcerated litigant.

Even though Pham demands an evidentiary hearing, the government contends that no hearing is required because the paper record contains sufficient material to support the district court's denial of the petition. It is within the district court's discretion to determine whether a hearing is warranted. *Chang*, 250 F.3d at 85–86. Among the wealth of materials available to the district court at its direction are the trial record, letters, documents, exhibits, affidavits and written interrogatories. Fed. R. Governing Section 2255 Proceedings 4, 7. After expanding the record, the district court then decides if an evidentiary hearing also is required. *Id.* 8. Our precedent disapproves of summary dismissal of petitions where factual issues exists, but it permits a "middle road" of deciding disputed facts on the basis of written submissions. *Chang*, 250 F.3d at 86.

The circumstances surrounding Pham's claim may make a hearing unnecessary. For example, the pre-sentence report regarding Pham, which petitioner stated he read and understood, noted that four defendants with whom Pham was indicted pleaded guilty in July 1995. Nonetheless, Pham waited two years after his sentencing before raising the issue of the unconveyed plea offer. After his conviction, Pham in an unsuccessful Rule 33 motion challenged his attorney's performance only on the ground that his lawyer had advised him not to testify even though he must have known about counsel's additional failure in at least pursuing a possible plea. These circumstances, none of which are in the district court's decisions, may warrant a finding against Pham.

The district court here merely credited the affirmation of Pham's trial counsel over Pham's affirmation and drew inferences adverse to Pham that the record does not support, such as ignoring the sentencing disparity and Pham's discussion of vicarious liability. In addition, the fact that Pham in his original petition was unaware of the global plea offer lends some weight to his claim of ignorance at the fault of counsel. Indeed, the district court's decisions suggest that it believed no hearing or even a "middle road" of record development was necessary.

■■■■ The ultimate issue here is admittedly close, and it may well be that Pham's allegations lack merit. Nonetheless, the district court abused its discretion in its selective consideration of the record and its failure even to draw upon existing parts of the record to support its conclusions.

While the district court has wide discretion in developing the record it will use to determine a habeas petition, that discretion does not extend to summary dismissals of petitions presenting facially valid claims and off-the-record interactions with trial counsel. *See Chang,* 250 F.3d at 85. The record as it presently exists does not support denial of Pham's petition.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is vacated and this matter is remanded for further proceedings in accordance with this opinion.

SOTOMAYOR, Circuit Judge, concurring in the judgment.

Judge Pooler today holds that the district court "abused its discretion in its selective consideration of the record and its failure even to draw upon existing parts of the record to support its conclusions," and accordingly determines that the judgment must be vacated and the petition must be remanded. I agree. I further concur substantially with her analysis of Pham's claim of ineffective assistance of counsel. I write separately, however, to emphasize what I see as a fundamental procedural problem that led to much of the difficulty with this case: the district court's multiple decisions, responding to piecemeal submissions by the petitioner and the government, illustrate both the

risk in summarily adjudicating of § 2255 claims on an unamplified "paper" record, and the need to advise *pro se* petitioners, early in the proceedings, of the factual specificity required to avoid dismissal of their § 2255 petitions.

Recognizing the potentially unfair consequences of summary dismissal of a habeas petition, § 2255 requires a "prompt hearing" on the movant's claims, except where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. The statute also provides that the court, after granting a hearing, may decide the motion "without requiring the production of the prisoner at the hearing." *Id.; see also Machibroda v. United States,* 368 U.S. 487, 495, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962) (observing that the "prompt hearing" requirement does not "imply that a movant must always be allowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim, no matter how vague, conclusory, or palpably incredible his allegations may be").

The variety of fact-finding approaches taken by courts—from expansion of the record by means of affidavits and other written submissions or through discovery, to full-blown hearings with live testimony by the movant and other witnesses—reflects the fact-sensitive flexibility of § 2255 as applied to prisoners' habeas motions.[1] Although this flexibility is consistent with

---

1. Courts have variously tailored the scope of the "prompt hearing" under § 2255 to meet the perceived evidentiary needs of the case. In some instances, those needs may lead the district court to order an expansion of the motion and trial record to include affidavits, documents, records, or other evidence submitted by the parties in written form. *See Machibroda,* 368 U.S. at 495–96, 82 S.Ct. 510 (remanding for a § 2255 hearing that, at a minimum, would require expansion of the motion and trial record to include such documents as prison visitation and mail records);

*Chang v. United States,* 250 F.3d 79, 86 (2d Cir.2001) (noting that a district court has discretion "to choose a middle road" of expanding the record by means of written submissions without requiring the live testimony of the movant and trial counsel). In other cases, the nature of the dispute before the district court may require a testimonial hearing. *See Machibroda,* 368 U.S. at 495–96, 82 S.Ct. 510; *see also United States v. Hayman,* 342 U.S. 205, 223, 72 S.Ct. 263, 96 L.Ed. 232 (1952) ("Where . . . there are substantial is-

the "sound discretion" of a district court to determine the kind of evidentiary hearing, if any, to require in a case, *Sanders v. United States*, 373 U.S. 1, 21, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), it also suggests that once the court has determined that the nature of the prisoner's allegations precludes summary adjudication, it should ensure that a full record is developed on disputed issues and that a live testimonial hearing be included as part of that process when warranted.[2]

A prisoner not trained in the law or familiar with legal process might reason-

sues of fact as to events in which the prisoner participated, the trial court should require his production for a [§ 2255] hearing."); *Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999) (remanding for *de novo* consideration of a magistrate judge's findings in an ineffective-assistance case, and requiring a testimonial hearing in the event that the district judge rejected any credibility findings based on live testimony given before the magistrate judge). In *United States v. Pisciotta*, 199 F.2d 603 (2d Cir.1952), this Court, dissatisfied with "conclusionary statements" offered in the affidavit of a *pro se* § 2255 movant, permitted the prisoner on remand to file a curative "supplemental affidavit." *Id.* at 606–07; *cf. Blackledge v. Allison*, 431 U.S. 63, 82 n. 25, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) ("[B]efore dismissing facially adequate [habeas] allegations short of an evidentiary hearing, ordinarily a district judge should seek as a minimum to obtain affidavits from all persons likely to have firsthand knowledge of the existence of any plea agreement.").

**2.** I disagree with Judge Kaplan's conclusion that no further development of the record is necessary here and note that the majority opinion does not endorse such a holding. Judge Kaplan makes much of the fact that "Pham knew when he went to trial in September of 1995 that several of his co-defendants, including individuals present when he was arraigned in July, were absent and that the only other defendant on trial with him was Nhat Duc Nguyen." Even if Pham was aware from the trial or the presentence report that several of his co-defendants had pleaded guilty, however, this does not mean that Pham knew of any possibility that *he* could plead guilty. Further, while there may have been other opportunities to discuss plea offers, the global plea offer was to expire before the two court appearances in July and August 1995; thus the dispute over whether Pham received the letter and global plea offer in June 1995 is not a "red herring."

I also disagree with Judge Kaplan's conclusion that the district court would be entitled to credit the affirmation of Pham's counsel over Pham's affirmation based on his past interactions with Pham. Any such determination of Pham's lack of credibility on this record would be premature, in light of Pham's offer to provide documentary evidence, in the form of the prison mail records and the testimony of the Vietnamese interpreter, supporting his contentions that he had never been advised of the possibility of a plea agreement. *Cf. Gallego v. United States*, 174 F.3d 1196, 1198–99 (11th Cir.1999) ("[W]e cannot adopt a *per se* 'credit counsel in case of conflict rule,' which allows that in any case where the issue comes down to the 'bare-bones testimony' of the defendant against the contradictory testimony of counsel, defendant is going to lose every time."). *See generally Iragorri v. United Techs. Corp.*, 274 F.3d 65, 75 (2d Cir. 2001) (in banc) (noting the importance of live witness testimony for assessment of credibility and demeanor by the trier of fact). Even where a district court has previously found a petitioner to be lacking in credibility on issues unrelated to the claims asserted in a § 2255 petition, the wholesale rejection of the petitioner's affirmations in support of the § 2255 petition is improper where there might be other evidence corroborating the petitioner's contentions. The resolution of such credibility determinations against a petitioner based solely on the district court's previous interactions with the petitioner and conclusion that he is once more "crying wolf," rather than on a full evidentiary record concerning material issues, would be an abuse of discretion. Indeed, even the fabled "boy who cried wolf" did, eventually, see an actual wolf.

Finally, even if there were not an issue here with respect to whether Pham received the global plea offer, there would still remain a substantial question whether Pham had received effective assistance of counsel because his counsel never stated that he explained to Pham that conspiracy or accomplice liability could arise without Pham's having committed an overt act or a substantive crime.

ably suppose that a heartfelt avowal of his or her veracity, however generalized, is sufficient to secure an evidentiary hearing. The typical prisoner might not infer from § 2254 or § 2255, or from the relevant federal rules or the local rules of the district courts, that more is required for obtaining a hearing than the "short and plain statement of the claim showing that the pleader is entitled to relief" that is required for initial pleadings under Fed. R.Civ.P. 8. *Cf.* 28 U.S.C. § 2242 ("[Application for a writ of habeas corpus] shall allege the facts concerning the applicant's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority, if known."). *But see* Fed. R. Governing § 2254 Cases 4 advisory committee's note (" '[N]otice' pleading is not sufficient, for the [federal habeas] petition is expected to state facts that point to a 'real possibility of constitutional error.' ") (quoting *Aubut v. State of Maine,* 431 F.2d 688, 689 (1st Cir.1970)).

Thus, a *pro se* movant in the § 2255 context might conclude that he or she need only identify witnesses, affidavits, or other categories of evidence that could be made available at an evidentiary hearing, rather than submit particularized factual allegations in the motion or affidavit itself. In such circumstances, summary disposition of a prisoner's claim might work harsh and unfair results. In this case, Pham offered to present additional evidence in the form of prison visitation and mail records and the testimony of a Vietnamese interpreter to support his claim that he had neither received the Government's offer nor discussed the offer with his defense counsel, but Pham's evidentiary submissions and proffers arrived piecemeal and haphazardly, and only after the district court had initially determined his claims to be incredible and frivolous. In consequence, Pham was unable to make a full and coher-

ent presentation of his factual claims before the court ruled on his § 2255 motion.

Some of this piecemeal motion practice could be remedied by giving *pro se* habeas movants time to reply to the Government's answer and defense counsel's counter-affidavit, and by informing *pro se* movants of the importance of factual specificity in any affidavits or other written materials included in their reply. In the roughly analogous context of summary judgment motions, *see United States v. Aiello,* 814 F.2d 109, 114 (2d Cir.1987) ("[L]ike a motion for summary judgment in civil cases, both the [§ 2255 movant's] and government's affidavits—taken together—are used to determine the existence of genuine issues of material fact."), this Circuit has adopted the salutary requirement that *pro se* litigants must understand the nature and consequences of their evidentiary burden as nonmovants under Fed.R.Civ.P. 56 before such motions can be granted, *see McPherson v. Coombe,* 174 F.3d 276, 282 (2d Cir.1999) ("[A]bsent a clear indication that the *pro se* litigant understands the nature and consequences of Rule 56 ... he or she must be so informed by the movant in the notice of motion or, failing that, by the district court."). This solicitude for *pro se* litigants in the Rule 56 context offers guidance for treating similarly-situated movants in the § 2255 context. *Cf. Harris v. Nelson,* 394 U.S. 286, 300, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969) ("[W]here specific allegations before the court show reason to believe that the [habeas] petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry. Obviously, in exercising this power, the court may utilize familiar procedures, as appropriate, whether these are found in the civil or

criminal rules or elsewhere in the 'usages and principles of law.' ") (quoting 28 U.S.C. § 1651). *See generally* Fed. R. Governing § 2255 Proceedings 12 ("If no procedure is specifically prescribed by these rules, the district court may proceed in any lawful manner not inconsistent with these rules, or any applicable statute, and may apply the Federal Rules of Criminal Procedure or the Federal Rules of Civil Procedure, whichever it deems most appropriate, to motions filed under these rules.").

While the disparities of legal knowledge and skill that exist between trained counsel and *pro se* litigants can never fully be remedied, courts should strive to level the playing field by rendering the process as fair and reasonable as is practical in the circumstances. Whether a district court decides to dispose of a prisoner's claims on the motion and trial record or after ordering an expansion of the record or a full testimonial hearing, the process leading up to that determination involves a careful, balanced evaluation by the court. In making this evaluation, the pleading context of the given case, including the difficulties faced by an untutored, *pro se* movant seeking to obtain a hearing in an unfamiliar medium and forum, should be carefully assessed. Had the district court in the present case encouraged Pham, either before the court invited a response to the petition from government or after that response was received, to come forward with relevant factual materials, affidavits, and potential witnesses—particularly after Pham had obtained a copy of the Global Plea Offer from the DOJ—much of this saga of piecemeal submissions and serial court rulings could have been avoided. Neither the parties nor the court benefit-

ted from the protracted and inefficient process that we see chronicled here and in other cases we have considered.[3]

KAPLAN, District Judge, concurring in the judgment.

This appeal, in my view, turns on whether the district court erred in rejecting defendant Pham's contention that his trial counsel provided inadequate representation because he failed to pursue plea discussions on defendant's behalf and to communicate a plea offer. The majority agrees that the district court "abused its discretion in its selective consideration of the record and its failure even to draw upon existing parts of the record to support its conclusions," including its conclusion that Pham's counsel did not provide inadequate representation. Judge Sotomayor, indeed, regards the current record as inadequate to justify such a conclusion. I regard the record as more than adequate to resolve this matter and find no fault in the district court's consideration of the evidence. I concur in the judgment, however, because it is unclear whether the district court's finding that Pham failed to establish that his counsel's representation fell below the constitutionally required minimum was intended to survive the last of Pham's submissions below. In my view, an explicit finding on this point, without expansion of the record, would be sufficient to warrant affirmance of the judgment.

I

The detailed procedural history of this case is pivotal to the proper analysis of this appeal, as it is highly relevant to the

---

**3.** *See, e.g., Chang,* 250 F.3d at 82 (noting that after the district court had denied the *pro se* movant's § 2255 motion and request for an evidentiary hearing, the prisoner submitted a motion for reconsideration mentioning for the first time a witness who allegedly could provide corroborative testimony); *Pisciotta,* 199 F.2d at 607 (permitting a supplemental affidavit on remand to "cure" defects in the initial § 2255 motion and affidavit).

district court's decision not to hold a full evidentiary hearing before denying Pham's habeas petition.

## A. The Indictments and Trial

Pham and six other defendants were charged on May 10, 1995 with conspiracy and a variety of other offenses in a thirteen count, sixth superceding indictment. Pham and three of his co-defendants were brought before the district judge on May 15, 1995 for a pretrial conference. Shortly thereafter, the grand jury returned a seventh superceding indictment naming Pham and eight other defendants. Pham and four others were arraigned before the district judge on that date.

## B. The Suppression Hearing

Prior to trial, Pham moved to suppress evidence of custodial statements, contending that he was unable fully to (a) understand an English language *Miranda* advice of rights form, and (b) "understand or grasp the contents and nature of the advice of rights which was written in Vietnamese." After hearing testimony from an FBI agent who had presented Pham with the forms and from Pham, the district court made detailed findings to the effect that Pham carefully read and understood the Vietnamese form and that the English form was read to and understood by him. He specifically found, "[b]ased on my observation of defendant Pham, [that] I do not accept his testimony to the extent that it is to the contrary."

## C. The Trial

During the course of July and August 1995, all of the defendants on the sixth and seventh superceding indictments save Pham, Nhat Duc Nguyen and two fugitives pleaded guilty. Thus, by the time Pham went to trial on September 28, 1995, Pham knew that all but one of his co-defendants (other than the fugitives) were not being tried with him.

## D. The New Trial Motion and Hearing

Pham was convicted in October 1995 and promptly moved for a new trial, contending that he had been deprived of his right to testify in his own defense by the error or misconduct of the Vietnamese interpreter. In his moving affidavit, he contended that he had relied upon the interpreter to aid him in conversing with his trial counsel, Mr. Siegel, and that he failed to take the stand in his own defense because the interpreter, in relaying remarks the interpreter attributed to Siegel, said "your attorney does not want you to come out and testify. If you do come out and testify, it would hurt you, it would not be beneficial to you." According to Pham, Siegel told him in a subsequent conversation that Siegel never had said any such thing, a statement corroborated by an affidavit from Siegel.

The district judge held an evidentiary hearing on Pham's claim. The interpreter testified that he never had interpreted any conversation concerning whether Pham should testify at trial.[4] Pham, in contrast, testified that the interpreter in question had translated a conversation between Pham and Siegel concerning whether Pham should take the stand and that the interpreter had told Pham that Siegel did not want Pham to testify "because it will be bad for your case." [5] At the conclusion

---

4. The closest he came to any such subject was to relay to Pham a message from Mr. Bogatin, who was representing co-defendant Nhat Duc Nguyen, that Pham should not "ask Mr. Nhan Duc Nguyen to testify because it is bad for his case."

5. Siegel then testified that the interpreter in question did translate a conversation in which

of the hearing, the court found that (1) the interpreter never translated any conversations between Pham and Siegel, nor said anything at all to Pham, about whether Pham should testify, and (2) Siegel had advised Pham that he had a right to testify in his own behalf and gave "no recommendation or instruction as to whether he should testify or not." It concluded that so much "of the motion which rests on Mr. Pham's affidavit of November 27th, 1995 should be denied on the facts and the law . . . ."

### E. The Sentencing

Pham came on for sentencing on November 12, 1997, more than two years after his conviction. The minutes reflect that he had the presentence report and, indeed, that it had been translated into Vietnamese and a copy of that version provided to him. Pham stated that he had been over the PSR with Siegel. The PSR disclosed that most of his co-defendants had pleaded guilty and, in some cases, the sentences imposed. Yet Pham suggested no dissatisfaction with Siegel's representation, let alone that Siegel had failed to pursue a plea bargain on his behalf.

### F. The Section 2255 Motion

Pham filed this motion on November 29, 1999. Insofar as it is relevant here, the petition and supporting papers asserted that Pham "[f]rom the very beginning of the proceedings" instructed Siegel to seek a plea bargain with the government, but that Siegel never told him whether he had done so or what, if any, response the government made. By order dated April 11, 2000, the district court rejected this claim on the alternative grounds that Pham had "not demonstrated that his counsel's per-

formance was outside the wide range of reasonable professional judgment" or that he was prejudiced by any failure to seek a plea agreement. It denied the motion and a certificate of appealability.

Pham then filed a notice of appeal and a motion for a certificate of appealability. The latter, an unsworn document, reiterated Pham's contention that his lawyer had not pursued a plea bargain with the government. It asserted also, for the first time, that Pham had heard from "a reliable source" that the government had offered him the opportunity to plead guilty and receive a five year sentence, but counsel never had communicated that offer to him. Some time later, Pham filed a supplement to the motion for a certificate of appealability to which he attached a copy of a letter, dated June 14, 1995, from the Assistant United States Attorney to the defendants' counsel. The letter offered Pham and his co-defendants an opportunity to plead guilty, conditioned on acceptance by all, under an arrangement pursuant to which Pham's guideline range would have been 78 to 97 months of imprisonment.

The government responded by submitting, *inter alia,* a declaration of Siegel in which he stated that he and Pham "had numerous meetings and conversations to discuss trial strategy as well as possible plea offers," that he had advised Pham of "all plea offers made by the government," that he had sent Pham a copy of the written global plea offer that Pham had attached to his supplement to his motion for a certificate of appealability, and that Pham repeatedly refused to consider pleading guilty. The declaration contained a copy of Siegel's letter transmitting the government's written plea offer to Pham. On October 12, 2000, the district court

---

Siegel advised Pham of his right to testify, but that he had told Pham the decision on whether to take the stand was Pham's.

found that Pham's "lawyer responsibly and timely brought the government's plea offer to his attention" and again denied a certificate of appealability.

Meanwhile, Pham had prepared a response to the government's submission, which arrived following the entry of the October 12 order. In another unsworn letter, he denied that he had received Siegel's letter transmitting the global plea offer. He asserted that FCI Otisville required inmates to sign for correspondence from attorneys and thus should have records that would corroborate his denial of receipt. He contended that Siegel never had visited him at Otisville, as allegedly would have been apparent from a review of the visitors' log. Finally, he maintained that, were a hearing held, he would call "the Vietnamese interpreter," who would "testify that she never visited me with Mr. Siegel at FCI Otisville." He did not, however, deny that he had discussed the possibility of a guilty plea with Siegel at other locations.

In a memorandum endorsement dated November 2, 2000, the district court recited the history of Pham's plea bargaining contention and acknowledged receipt of his letter denying receipt of the global plea offer. Rather than again addressing the conflict between the accounts of Pham and Mr. Siegel, however, the district judge assumed *arguendo* that Pham's assertions were true, but denied the renewed application on the ground that Pham had failed to establish prejudice in that he had not demonstrated a reasonable probability that he would have accepted the plea offer.

## II

The threshold question therefore is whether the district court erred in declining to hold an evidentiary hearing on Pham's contention that his trial counsel did not render effective assistance in connection with plea discussions, assuming *arguendo* that a failure to follow a client's instruction to pursue a plea bargain would constitute constitutionally deficient representation.

The panel appears to be united in the view that district courts enjoy discretion in determining whether a testimonial hearing is necessary to resolve a Section 2255 motion that presents a disputed question of fact. *See, e.g., Chang v. United States,* 250 F.3d 79, 86 (2d Cir.2001). While the limits of such discretion, perhaps, are not entirely clear, the Supreme Court has made plain that no hearing is required, such as in this case, where the allegations are too vague, conclusory, or "palpably incredible." *E.g., Machibroda v. United States,* 368 U.S. 487, 495–96, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). That proposition, in my view, is sufficient to dispose of Pham's contention that his trial counsel failed to pursue a plea bargain.

Pham claims that he instructed Mr. Siegel "from the very beginning of the proceedings" to pursue a plea bargain with the government. Yet he did not raise any question about Siegel's alleged failure to do so—this despite his claim that Siegel never reported back to him about any such effort—until November 1999, more than four years later and well after the hearings on his suppression and new trial motions. This in itself is powerful evidence that Pham's contention is a belated afterthought, invented years later. But, there is even more persuasive proof.

Pham knew when he went to trial in September 1995 that several of his co-defendants, including individuals present when he was arraigned in July, were absent and that the only other defendant on trial with him was Nhat Duc Nguyen. The inference that he knew that they had pleaded guilty—which was a matter of

public record is compelling, which would make his silence on this issue until November 1999 even more damning. In the last analysis, however, even this inference is unnecessary.

Pham came on for sentencing more than two years after his conviction. The minutes reflect that he had the presentence report and, indeed, that it had been translated into Vietnamese and a copy of that version provided to him. He stated that he had been over the PSR with his counsel. The PSR disclosed that most of his co-defendants had pleaded guilty and, in some cases, the sentences imposed. Nevertheless, there still was no suggestion that Siegel had disregarded Pham's instructions to pursue a plea bargain.

If Pham really had been interested in negotiating a plea "from the very beginning" but had heard nothing back from Siegel, his failure to raise that contention prior to trial and, certainly, at or before sentencing would be inexplicable. Even more inexplicable would be his failure to raise the issue during the two additional years that passed between his sentencing and the filing of this motion. This alone, in my view, renders his claim "palpably incredible." Moreover, the district court already had held two evidentiary hearings at which Pham had testified—one on the motion to suppress and the other on Pham's new trial motion—and found his testimony unworthy of belief on both occasions.

In all the circumstances, the district court surely did not abuse its discretion in rejecting, without an evidentiary hearing, Pham's contention that Siegel had rendered ineffective assistance by failing to pursue a plea bargain. Section 2255 "does not strip the district courts of all discretion to exercise their common sense." *Machibroda*, 368 U.S. at 495, 82 S.Ct. 510.

## III

The question then becomes whether Pham's final submission, in which he denied both receipt of the global plea offer and that Siegel had visited him at Otisville, changed anything.

Certainly, Pham's contention that Siegel never had visited him at Otisville raised no material issue of fact. Siegel swore only that he had had numerous discussions and meetings with Pham and had kept him fully apprized about the possibility of a plea bargain, not that he had visited him at Otisville.[6] So the matter boils down to Pham's contention that Siegel's letter with the copy of the written plea offer never reached him and his implicit assertion that he never discussed it with Siegel.

The majority focuses on Pham's contention that he never received Siegel's letter and that this could be verified by checking records at FCI Otisville and then proceeds to fault the district court for "merely credit[ing] the affirmation of Pham's trial counsel over Pham's affirmation." In my view, however, the dispute over the letter is a red herring, and the characterization of the district court's treatment of the conflict between Pham and Siegel is inaccurate.

To begin, the question whether Pham received Siegel's letter at Otisville is beside the point. Siegel's letter was dated June 16, 1995. Pham appeared in court with Siegel on July 11 and August 16, 1995 as well as for the suppression hearing and trial, which began in late September. There was ample opportunity for him and

---

**6.** Pham of course was at the courthouse in New York City for pretrial and post-trial hearings, the trial and his sentencing. There is no suggestion in the record that he was incarcerated only at Otisville.

Siegel to have discussed plea bargains in general and the government's written plea offer in particular. The real question is whether Siegel communicated the offer to him, not whether Pham received a written copy at Otisville. So, I find no abuse of discretion in the district court's failure to require production of mail records from FCI Otisville or otherwise to pursue additional evidence regarding the question whether Siegel's letter, the authenticity of which was unquestioned, ever actually reached Pham.[7]

The suggestion that the district court simply credited Siegel's declaration over Pham's letter, as I see it, is flawed in two respects. First, while the district court's October 12 order certainly credited Siegel's account over Pham's, its November 2 order—which was prompted by Pham's contention that he never received Siegel's letter with the copy of the written plea offer—did not explicitly revisit the credibility issue. It assumed *arguendo* the truth of Pham's assertion regarding the letter and went off instead on the ground that Pham would not have pleaded guilty in any case and therefore was not prejudiced by any deficiency. Thus, it is unclear whether the district court, upon consideration of all of the submissions, intended to adhere to its findings that Siegel's account was accurate and that

Pham's implicit assertion that the plea offer never was communicated to him was false. Second, assuming that the district court meant to adhere to its prior finding that Siegel had kept Pham fully informed about plea discussions and possibilities, it certainly did not "merely credit[ ] the affirmation of Pham's trial counsel over Pham's affirmation." It had the benefit not only of Siegel's declaration, but of the utter improbability of Pham's claim in light of the lengthy delay in raising it, particularly when measured against his insistence that he told Siegel to pursue a plea from "the very beginning of the proceedings," and of two evidentiary hearings, both of which resulted in findings that prior claims by Pham were false.[8]

For these reasons, I cannot join in the reasoning of either of the other opinions. Nevertheless, I find troublesome the lack of a finding in the November 2 order that Pham, notwithstanding his final submission, was fully apprized of the global plea offer. While I believe the district court would have been justified in making such a finding on the existing record, we may not simply assume that it did so. I therefore join in vacating and remanding for further proceedings. If, on remand, the district court were to make such a finding, even on the present record, I would regard that

---

7. Judge Sotomayor argues that the question whether Pham received Siegel's letter with the copy of the global plea offer while he was at Otisville is significant. The argument, however, ignores the fact that the important issue is whether Pham knew of and discussed the offer with his counsel, not whether he had received the copy of the government's letter while he was at Otisville. The concurrence simply disregards, without acknowledging, the undisputed opportunities for such communication while Pham was in New York for court appearances.

8. Thus, to suggest, as does Judge Sotomayor's concurrence, that it would be wrong to resolve credibility issues "against a petitioner

based solely on the district court's previous interactions with" the petitioner, I respectfully submit, misses the point, just as does Judge Pooler's contention that the district court simply credited Siegel's declaration over Pham's letter. Neither description is accurate. Rather, this case presents an unusual and perhaps unique confluence of mutually reinforcing factors including Pham's previous false testimony, the improbability of his story, and the long delay in asserting the claim notwithstanding his awareness of facts which would have prompted its earlier assertion if it were accurate—all of which strongly suggest that Pham's claim was a fabrication.

finding as sufficient and dispositive of the ineffective assistance of counsel claim.