**Lonnie LAKE, Petitioner**

v.

**UNITED STATES of America, Defendant.**

**No. 07–CV–3922 (ADS).**

United States District Court, E.D. New York.

Aug. 19, 2010.

---

Loretta E. Lynch, United States Attorney, Eastern District of New York, Central Islip, N.Y., by Richard P. Donoghue, Assistant United States Attorney, for Defendant.

Samuel Rieff, Esq., Garden City, N.Y., for Petitioner.

Lonnie Lake, Minersville, P.A., Pro Se Petitioner.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On March 17, 2003 Petitioner Lonnie Lake ("Lake") pleaded guilty to five counts of conspiring to distribute and possess with intent to distribute 16,500 grams of marijuana, 26,000 grams of powder cocaine and 1,600 grams of crack cocaine. The Court initially sentenced Lake to 252 months imprisonment but has since reduced his sentence to 240 months imprisonment.

Lake has filed a Petition under 28 U.S.C. § 2255 to vacate or set aside his conviction and sentence on the grounds that he received ineffective assistance of counsel. Lake also requests that the Pre-

sentence Report ("PSR") be amended, claiming that it erroneously states he was convicted on two counts of possessing a firearm. For the reasons discussed below, Lake's Petition is denied.

## I. BACKGROUND

### A. Lake's Conviction

Lake was arrested in connection with a narcotics trafficking conspiracy that he and several others operated from various locations in Long Beach, New York. On June 12, 2001, a federal Grand Jury returned an indictment charging Lake with narcotics conspiracy and two firearm possession counts. The Grand Jury later returned a superseding indictment adding charges for the possession and distribution of narcotics.

Lake filed various pre-trial motions but each was denied by the Honorable Jacob Mishler, the United States District Judge who was previously assigned to this case. In plea negotiations, Lake's counsel, Paul Goldberger, represented that his client was unwilling to plead guilty to a count carrying a 10–year mandatory minimum sentence. After these negotiations, Goldberger wrote to Lake on February 5, 2002 to report that the Government was unwilling to offer a more favorable plea deal. In his letter, Goldberger referenced that Lake had previously indicated that he was not "anxious" to accept such a plea offer. Pet's Ex. C.

After Lake rejected the Government's plea offer, on March 12, 2002, the Government filed a Prior Felony Information against Lake, effectively increasing his mandatory minimum sentence from 10 to 20 years. Lake qualified for this increased minimum sentence because of his prior conviction for felony narcotics trafficking. At the time the Prior Felony Information was filed, Lake was still represented by Goldberger. However, due to health problems, Goldberger was forced to withdraw.

Attorney Elizabeth Macedonio appeared with Goldberger at a status conference before this Court on April 26, 2002 and was officially retained by Lake on May 3, 2002.

On the eve of trial, Lake pleaded guilty to all counts in the superseding indictment. During the plea proceedings, the Court was dissatisfied with Lake's allocution to the firearm charges (Six and Eight) and permitted Lake to withdraw his guilty plea as to those counts. During the allocution, the Court also made the following inquiry into Lake's satisfaction with Macedonio's representation:

> The Court: Are you satisfied with the assistance your lawyer Elizabeth Macedonio has given you thus far in this matter?
>
> Lake: Yes, sir.
>
> The Court: Do you feel you need any more time to discuss with her the question of this guilty plea?
>
> Lake: No, sir.
>
> Gov't. Ex. 7, p. 12.

At Macedonio's request, the Court permitted her to withdraw from representing Lake on September 19, 2003.

### B. Lake's Sentencing

The Probation Department's initial PSR incorrectly stated that Lake had pleaded guilty to the firearm possession charges. After the Government advised Probation of this error, the PSR was amended to reflect that Lake did not actually plead guilty to these counts.

In April of 2005, Lake retained attorney Peter Tomao to represent him in the sentencing phase of this case. After a *Fatico* hearing, the Court determined, based upon the quantity of drugs involved in his offenses, that Lake had a Base Offense Level of 38. The Court further determined that a two-level reduction for acceptance of

responsibility was warranted. However, the Court also found that a two-level enhancement was in order because the Government established that authorities found a loaded firearm under Lake's mattress while executing a search warrant. Accordingly, the Court determined that Lake's Total Offense Level was 38.

Given Lake's Criminal History Category of III, the Court found that the resulting Guidelines sentencing range was 292–365 months, with a mandatory minimum of 240 months. However, the Court sentenced Lake to a non-Guidelines sentence of 252 months. In sentencing Lake, the Court did not take into account the then-existing disparity between the Guidelines' treatment of crack and powder cocaine offenses.

After the United States Sentencing Commission issued an amendment to the Sentencing Guidelines ("Amendment 706") that reduced by two levels the base offense levels applicable to crack cocaine offenses, Lake moved for a reduction in his sentence. See U.S.S.G. § 2D1.1 (2007); *Amendments to the Sentencing Guidelines for United States Courts,* 72 Fed. Reg. 28571–28572 (2007). On February 22, 2010, pursuant to Amendment 706, the Court reduced Lake's sentence to the mandatory minimum of 240 months imprisonment.

## C. The Instant Petition

Lake retained attorney Samuel Rieff to prepare a habeas petition challenging his conviction and sentence. In his original Petition, Lake alleged that Macedonio was constitutionally ineffective in encouraging him to proceed to trial in the hope of pressuring the Government to improve its plea offer. Acting *pro se,* he filed an "amended" Petition asserting that Tomao was ineffective during the sentencing phase of his case. On April 8, 2009, Lake filed a second *pro se* "amendment" to his original Petition, challenging a sentencing enhancement and the appeal waiver contained in his plea agreement. Lake filed a third *pro se* "amendment" to his Petition on January 4, 2010, effectively withdrawing the two earlier *pro se* submissions.

In the most recent Petition, Lake claims that when he was represented by Goldberger, the Government offered him the opportunity to plead to a count carrying a 10–year mandatory minimum sentence. Lake contends that after Macedonio was retained, she convinced him that if he went to trial, the Government would be pressured into reducing its plea offer. Lake maintains that he ultimately pleaded guilty to a 20–year mandatory minimum sentence because "when we pushed the case to trial, things kept getting worse and worse. The Government's plea offer, instead of getting better, got worse." Pet. Ex. E ¶ 7. According to Lake, if Macedonio had counseled him properly, he would have pleaded guilty to a count carrying the 10–year mandatory minimum and therefore would have avoided the more severe sentence imposed by the Court.

Lake requests the appointment of new counsel to replace Rieff and contends that the Court must conduct an evidentiary hearing into his allegations. In the event that the Court denies his Petition, Lake seeks a certificate of appealability.

## D. Macedonio's Affirmation

On December 26, 2007, Macedonio filed an affirmation in this case, contradicting Lake's allegations. She claims that she never advised him that "going to trial is a way to obtain a better plea offer." Gov't. Ex. 5 at ¶ 4. According to Macedonio, throughout her representation, Lake "repeatedly asserted that he was not willing to accept a ten year plea offer, because [he believed] the potential witnesses would refuse to testify against him." Id. at ¶ 6.

After having her private investigator meet with the Government's witnesses, Macedonio advised Lake that the witnesses were "fully prepared to testify against him at trial" and that it was her belief that "their testimony would lead to a conviction." Id. at ¶ 7. Macedonio claims that after reviewing the Jencks Act material, Lake was convinced that the witnesses would in fact testify and decided to plead to a charge carrying the 20–year mandatory minimum sentence. Id. at ¶¶ 12, 13.

## II. DISCUSSION

### A. Lake's Motion to Vacate or Set Aside His Conviction and Sentence

■ Under the *Strickland* standard, a claim of ineffective assistance of counsel requires a showing that: (1) counsel's performance fell below an objectively reasonable standard of performance; and (2) the deficient performance prejudiced the outcome of the proceeding. *Bierenbaum v. Graham,* 607 F.3d 36, 50 (2d Cir.2010) (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). With respect to the first prong, Lake claims that Macedonio was ineffective in counseling him that he would receive a more favorable plea offer if he pushed the case to trial.

However, contrary to Lake's allegations, Macedonio maintains that she never "advise[d] [Lake] that going to trial is a way to obtain a better plea offer." Gov't. Ex. 5 at ¶ 4. In fact, according to Macedonio, the case proceeded to jury selection because Lake "repeatedly asserted that he was not willing to accept a ten year plea offer, because [he believed] the potential witnesses would refuse to testify against him." Id. at ¶ 6.

In some cases, this type of factual dispute, involving off-the-record interactions between counsel and the petitioner, would require an evidentiary hearing. *Chang v. United States,* 250 F.3d 79, 85 (2d Cir.

2001) (citing *Armienti v. United States,* 234 F.3d 820, 825 (2d Cir.2000)). However, although the Second Circuit "disapproves of summary dismissal of petitions where factual issues exists[sic]" district courts may take a " 'middle road' of deciding disputed facts on the basis of written submissions." *Pham v. United States,* 317 F.3d 178, 184 (2d Cir.2003). In this case, the Court finds a hearing is unnecessary for three separate reasons.

First, Macedonio's account is corroborated by Goldberger's February 5, 2002 letter. In that letter, Goldberger reported to Lake that "[a]fter several discussions with [the Government] ... it appears whatever plea offer we are able to obtain under the sentencing guidelines will not under any circumstances be less than 120 months (10 years)." Pet. Ex. C. Goldberger then acknowledged that Lake was not "anxious to take that kind of offer." Id. This comports with Macedonio's claim that Lake was unwilling to accept the ten-year plea offer even before she entered the case.

Second, the Court is convinced that a hearing would not offer any reasonable chance of altering its view of the facts. Lake has essentially filed four separate petitions and has had ample opportunity to offer his account of Macedonio's representation. Macedonio, a well-respected criminal defense attorney, has included in her affirmation everything that the Court would like to know about her account. Under the circumstances, the Court finds that a full testimonial hearing would not shed any additional light on the instant factual dispute.

Third, a hearing is unnecessary because, even if Lake's account is accurate, the Court is not convinced that Macedonio's performance was objectively unreasonable. Assuming that Macedonio did counsel Lake to proceed to trial in order to extract

a more favorable plea deal from the Government, Lake fails to articulate how this advice could give rise to an ineffective assistance claim.

Mindful of the pitfalls inherent in second-guessing counsel's trial strategy, the Supreme Court has emphasized that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052. Lake does not allege that Macedonio failed to conduct a thorough investigation in this case. To the contrary, Macedonio's affirmation reflects that, in addition to holding plea discussions with the Government, she had a private investigator interview witnesses and met with Lake numerous times to review the Government's evidence. Gov't. Ex. 5 ¶¶ 9, 10, 12. If, after diligent investigation, Macedonio believed that it was in Lake's best interest to proceed to trial in the hope of securing a better plea offer, the Court will not second-guess that advice on habeas review. It is also noteworthy that, at least at the time of his allocution, Lake told the Court that he was fully satisfied with Macedonio's representation. Gov't. Ex. 7, p. 12.

■ Even if Lake could establish that Macedonio's performance was deficient, he is still unable to satisfy the second prong of the *Strickland* analysis. In the context of plea offers, to establish prejudice, a petitioner must show a reasonable probability that but for counsel's faulty advice, he and the Government would have agreed to a plea deal carrying a more favorable sentence than the one imposed by the Court. *Aeid v. Bennett*, 296 F.3d 58, 63 (2d Cir.2002).

■ Lake's Petition rests on his claim that the Government increased its plea offer from a 10–year mandatory minimum sentence to a 20–year mandatory minimum sentence only after he followed Macedonio's advice to "push[ ] the case to trial".

Pet. Ex. E ¶ 7. However, the record reflects that the Felony Information which effectively increased Lake's mandatory minimum sentence was filed on March 12, 2002, nearly two months before Macedonio was even retained. This means that by the time Macedonio became involved in the case, the offer to plead guilty to a count carrying a 10–year mandatory minimum sentence was no longer on the table. It is difficult to imagine, then, how Macedonio's advice was responsible for depriving Lake of the opportunity to accept the Government's original plea offer.

However, even assuming that the offer was still available when Macedonio was initially retained, there is no indication—other than Lake's own self-serving statements—that he ever would have agreed to such a plea. As discussed above, Goldberger's letter reflects that Lake was "not anxious" to accept the Government's offer to plead to a count carrying a 10–year mandatory minimum sentence. Pet's Ex. C. Macedonio confirms that Lake was unwilling accept this plea offer, until he reviewed the Jencks Act material on the eve of trial and realized that the Government's witnesses would actually testify against him. Id. at ¶ 12. Of course, by that time, the Government had filed the Prior Felony Information and the original offer was no longer available. On this record, Lake is unable to establish that, but for Macedonio's advice, he would have accepted the more favorable plea offer.

## B. Lake's Motion to Modify the PSR

In his original Petition, Lake requested that the PSR be amended, claiming that it erroneously states he was convicted on two counts of possessing a firearm. Lake is correct that the original PSR, dated July 2, 2003, did include this error. However, after the Government highlighted the error, Probation issued an amended PSR on

July 18, 2003, correctly noting that Lake did not plead guilty to the firearms possession counts in the superseding indictment. Accordingly, there is no reason to amend the PSR.

## C. The Appointment of Counsel

Lake retained Rieff in 2006 to prepare and file the original Petition. For reasons unclear to the Court, Rieff never filed a reply to the Government's opposition papers. Although Rieff still appeared to be representing Lake as recently as November of 2009, Lake has filed several *pro se* "amendments" to the original Petition.

Without offering any evidence that he is now financially unable to retain a lawyer, Lake requests that the Court appoint new counsel. However, the Court has already determined that an evidentiary hearing is unwarranted. More importantly, the Court has found that Lake has failed to assert a viable ineffective assistance of counsel claim. Accordingly, there is no basis for appointing counsel in this matter.

## III.   CONCLUSION

Lake's Petition to vacate or set aside his conviction and sentence is denied. His request to modify the PSR and his application for the appointment of counsel are also denied. As Lake has failed to make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), his request for a certificate of appealability is denied. The Clerk of the Court is directed to close this case.

**SO ORDERED.**