10-0611-pr
Matthews v. USA

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2011

(Argued: January 25, 2012                                        Decided: June 14, 2012)

Docket No. 10-0611-pr

_____

MICHAEL MATTHEWS,

Petitioner-Appellant,

- v. -

UNITED STATES OF AMERICA,

Respondent-Appellee.
_____

Before: KEARSE, CABRANES, and STRAUB, Circuit Judges.

Appeal from orders of the United States District Court for the Northern District of New York, David N. Hurd, Judge, denying motion under 28 U.S.C. § 2255 to vacate petitioner's conviction or correct his sentence of life imprisonment under the three-strikes provision of 18 U.S.C. § 3559(c).

Vacated in part, and remanded.

JESSE M. SIEGEL, New York, New York, for Petitioner-Appellant.

MICHAEL MATTHEWS, Petitioner-Appellant pro se, Pine Knot, Kentucky, filed a supplemental brief.

BRENDA K. SANNES, Assistant United States Attorney, Syracuse, New York (Richard S. Hartunian, United States Attorney for the Northern District of New York, Edward R. Broton, Rajit S. Dosanjh, Assistant United States Attorneys, Syracuse, New York, on the brief), for Respondent-Appellee.

KEARSE, Circuit Judge:

Petitioner Michael Matthews, who received a sentence of life imprisonment as a career offender pursuant to 18 U.S.C. § 3559(c) following his conviction in 2007 of federal bank robbery and conspiracy offenses, appeals (1) from an order of the United States District Court for the Northern District of New York, David N. Hurd, Judge, denying his motion under 28 U.S.C. § 2255 to vacate his conviction or correct his sentence on the principal grounds that he was denied effective assistance of trial counsel and appellate counsel, and (2) from the denial of his motion for reconsideration. Matthews contends that the district court erred in denying his § 2255 motion without conducting a hearing and without giving a meaningful explanation for its decision. For the reasons that follow, we conclude that the matter must be remanded to the district court for further proceedings on at least one of Matthews's claims and for specification by the district court of the issue or issues as to which it granted Matthews, without explanation, a certificate of appealability (or "COA") to seek review of its denial of his § 2255 motion.

## I.  BACKGROUND

Matthews has a history of convictions for robbery and burglary offenses dating back at least to 1971, when he was convicted of first-degree robbery in violation of N.Y. Penal Law § 160.15 and two counts of second-degree burglary in violation of N.Y. Penal Law § 140.25, resulting in a state-court youthful offender adjudication. His § 2255 motion focuses principally on his most recent convictions and their relationship to his past troubles with the law.

A. Matthews's Most Recent Convictions

In 2006, in a superseding federal indictment, Matthews was charged with one count of bank robbery, in violation of 18 U.S.C. § 2113(a), and one count of conspiracy to commit bank robbery, in violation of 18 U.S.C. § 371 ("the 2006 charges"). The government filed an "Enhanced Penalty Information" alleging that Matthews had previously been convicted of several serious violent felonies; that his record included convictions in 1983 on two counts of first-degree robbery in violation of N.Y. Penal Law § 160.15, and convictions in 1996 of bank robbery in violation of 18 U.S.C. §§ 2113(a) and (b), and conspiracy to commit bank robbery in violation of 18 U.S.C. § 371; and that, on the 2006 charges, the government would therefore seek enhanced punishment for Matthews under the three-strikes provision of 18 U.S.C. § 3559(c).

Section 3559(c) provides, in pertinent part, that if a person "convicted in a court of the United States of a serious violent felony" has previously "been convicted (and those convictions have become final) on separate prior occasions in a court of the United States or of a State of . . . 2 or more serious violent felonies," that person, "[n]otwithstanding any other provision of law, . . . shall be sentenced to life imprisonment." 18 U.S.C. § 3559(c)(1)(A)(i). For purposes of this section, "'serious violent felony'" is defined to include "robbery (as described in section 2111, 2113, or 2118)" and "conspiracy . . . to commit any of the above offenses." Id. § 3559(c)(2)(F)(i). See also United States v. Snype, 441 F.3d 119, 144 (2d Cir. 2006) ("Snype") (because the New York Penal Law "statutory elements" of robbery, including "§ 160.15," "parallel those required to establish robbery under 18 U.S.C. §§ 2111, 2113(a), and 2118(a), . . . New York State convictions for first and second degree robbery by definition qualify as serious violent felonies under § 3559(c)(2)(F)(i)").

At a jury trial in September 2006, at which Matthews was represented by James F. Greenwald of the Office of the Federal Public Defender, Matthews was found guilty of the 2006 charges. In 2007, the district court found, over defense objections, that Matthews had previously been convicted of at least two serious violent felony offenses, and it sentenced him to, inter alia, concurrent terms of life imprisonment. On direct appeal, for which Matthews was represented by new counsel, his conviction and sentence were affirmed. See United States v. Matthews, 545 F.3d 223, 225 (2d Cir. 2008) (noting People v. Matthews, 68 N.Y.2d 118, 123, 506 N.Y.S.2d 149 (1986) (which had affirmed Matthews's first set of adult convictions), and United States v. Matthews, 20 F.3d 538, 553-55 (2d Cir. 1994) (which had affirmed his second set of adult convictions)).

B.  Matthews's § 2255 Motion

In March 2009, Matthews, proceeding pro se, filed the § 2255 motion that is the subject of the present appeal, asserting four claims. He alleged principally that he was denied effective assistance of counsel ("IAC") at trial because Greenwald had hired, as an investigator to assist in Matthews's defense, a former police officer with whom Greenwald knew Matthews "had a prior negative relationship" (Matthews § 2255 Motion at 5). The motion alleged that the investigator, Richard Haumann, had been a deputy police chief in Syracuse, New York, and that he had "arrested . . . [and] viciously assaulted" Matthews and addressed Matthews "with racial disdain and insensitivity" at a time when Matthews was accused of the attempted murder of a police officer. (Id.) The motion alleged that due to the conflict of interest stemming from this history, Haumann and Greenwald failed to conduct an adequate investigation into possible defenses for Matthews against the 2006 charges.

4

The other claims asserted in Matthews's § 2255 motion were that he was denied effective assistance of counsel on his direct appeal because his new attorney had, inter alia, failed to communicate with him and to raise meritorious issues on appeal, including the IAC allegations against trial counsel, of which she was aware; that the district court lacked jurisdiction to enhance his sentence under § 3559(c) because the court did not ascertain that Matthews's predicate crimes were violent or that the predicate convictions were final; and that his life sentences violated the Eighth Amendment's prohibition against cruel and unusual punishment.

The § 2255 motion requested a hearing, a determination of the relief to which Matthews was entitled on these claims, and/or a reduction of his sentence. Matthews also made several requests that the court furnish him with trial and hearing transcripts and/or appoint counsel to represent him in connection with the motion. Those motions were denied. However, the district court instructed the government to file a response to Matthews's § 2255 motion and stated that the matter would be taken on submission.

The government, in its opposition to Matthews's § 2255 motion, submitted a memorandum arguing that his claims should be rejected for a variety of reasons. As to the claim of ineffective assistance of trial counsel, the government argued (a) that Matthews failed to prove deficient performance as required by Strickland v. Washington, 466 U.S. 668 (1984), in that his allegations were "general," "cursory," "vague," and lacking in reference to specific incidents that might substantiate his claim of conflict between himself and the investigator hired by trial counsel, and (b) that Matthews failed to prove the prejudice element of the Strickland test because, given the district court's description of the trial evidence as to Matthews's guilt as overwhelming, Matthews could not show a reasonable probability that but for deficient performance on the part of his attorney

5

the outcome of his trial would have been different. (Government Memorandum in Opposition to Petitioner's Motion Pursuant to 28 U.S.C. § 2255 ("Government Memorandum") at 7-9.) As to the claim of ineffective assistance of appellate counsel, the government argued (a) that counsel had simply made a "cho[ice] to advance stronger arguments on appeal and eliminate weaker ones" (id. at 12) and that her choice thus did not amount to constitutionally deficient performance (see id. at 10-12), and (b) that other arguments against application of the career offender statute would not have been proper issues for appeal because they had not been raised in the district court (see id. at 10).

The government opposed Matthews's claim that the district court lacked jurisdiction to impose a life sentence under § 3559(c)(1)(A)(i) on the grounds (a) that that claim was procedurally barred because Matthews had not raised it on direct appeal from his conviction, and (b) that the claim lacked merit because the district court had properly determined, based on adequately supported findings, that § 3559(c) was applicable based on Matthews's prior commission of at least two serious violent felonies. (See id. at 12-15.)

As to Matthews's Eighth Amendment claim, the government argued (a) that the claim was procedurally barred because Matthews failed to raise it on direct appeal, and (b) that it lacked merit in light of this Court's decision in Snype, 441 F.3d at 152 (holding that a life sentence pursuant to § 3559(c) does not constitute cruel and unusual punishment). (See Government Memorandum at 15-16.)

After the government filed its memorandum, Matthews requested and received leave to amend his motion. However, the May 13, 2009 order granting that permission instructed that any amendment be filed on or before July 17; no amendment was filed.

By Order dated July 22, 2009 ("July 2009 Order"), the district court denied Matthews's § 2255 motion, stating as follows:

> On March 23, 2009, the petitioner/defendant filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his conviction of September 11, 2006, and judgment of February 22, 2007. (Docket No. 95)[.] The Government filed a memorandum in opposition. (Docket No. 100). The petitioner/defendant's request for permission to amend the original petition (Docket No. 101) was granted on May 13, 2009. (Docket No. 102). The petitioner/defendant failed to file an amendment by the due date of July 17, 2009.
>
> Upon a review of the submissions and for all of the reasons set forth in the Government's memorandum, it is
>
> ORDERED, that the petitioner/defendant's motion pursuant to 28 U.S.C. § 2255 is DENIED.

July 2009 Order at 1-2.

Matthews moved for reconsideration of the July 2009 Order, stating that he had informed the court that he would be unable to comply with the July 17 deadline for amendment and that the clerk of the court had indicated to him that the transcripts he had requested would be forthcoming. Matthews contended that his § 2255 motion should not have been denied without giving him additional time. The motion for reconsideration was summarily denied. See District Court Order dated September 11, 2009.

Matthews thereafter applied to the district court for a certificate of appealability to challenge the denials of his § 2255 motion and his motion for reconsideration. In an order dated December 17, 2009 ("December 2009 Order"), the court granted the COA, stating only as follows:

> On September 21, 2009, the petitioner filed an Application for Certificate of Appealability (Docket No. 107) for the denial of his motion pursuant to 28 U.S.C. [§] 2255 to vacate his conviction (Docket No. 103), and for reconsideration (Docket No. 106). The Government has not opposed.

Therefore, it is

ORDERED that a Certificate of Appealability is GRANTED.

IT IS SO ORDERED.

December 2009 Order at 1-2.


## II.  DISCUSSION


On this appeal, represented by new counsel appointed by this Court in June 2010, Matthews argues principally that the district court abused its discretion in denying his § 2255 motion without an evidentiary hearing and "without any findings or conclusions other than the statement that [the denial] was 'for all of the reasons set forth in the Government's memorandum'" (Matthews brief on appeal at 5 (quoting July 2009 Order)).  He asks that we remand to the district court with instructions (a) to appoint counsel to assist him, (b) to allow him to amend his § 2255 motion and respond to the Government Memorandum, and (c) "once the record is fully and fairly developed," to make "findings and conclusions consistent with the requirements of" § 2255.  (Matthews brief on appeal at 15.)  For the reasons that follow, we vacate the July 2009 Order to the extent that it summarily rejected Matthews's claim of ineffective assistance of trial counsel due to the alleged conflict of interest of the investigator hired by counsel.  We remand for further proceedings on that claim, as well as for identification by the district court of any other issues as to which its December 2009 Order was meant to grant a certificate of appealability.

A. The Specificity Requirement for an Order Granting a COA

The federal habeas appeals statute, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1)(B). Notwithstanding § 2253(c)'s reference to a "circuit justice or judge" as the potential issuer of a COA, a district judge too has authority to grant a COA. See, e.g., Soto v. United States, 185 F.3d 48, 51 n.3 (2d Cir. 1999) ("Soto"); Lozada v. United States, 107 F.3d 1011, 1014-16 (2d Cir. 1997), abrogated on other grounds by United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997), cert. denied, 525 U.S. 953 (1998).

AEDPA provides that the COA may be granted "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). It requires the judge, in granting a COA, "to indicate the 'specific issue or issues' that satisfy the 'substantial showing of the denial of a constitutional right' standard." Blackman v. Ercole, 661 F.3d 161, 164 (2d Cir. 2011) ("Blackman") (quoting 28 U.S.C. §§ 2253(c)(2) and (3)).

Our decision in Blackman (which was issued more than a year after the district court's grant of the COA in the present case) noted that the specificity requirement is "a threshold procedural requirement designed to 'avoid[] the waste of judicial energy on the consideration of clearly meritless claims,'" Blackman, 661 F.3d at 164 (quoting Grotto v. Herbert, 316 F.3d 198, 209 (2d Cir. 2003)); see, e.g., Blackman, 661 F.3d at 164 ("Appellate courts cannot waste scarce judicial resources by wading through trial records in an effort to guess which issues a district judge may have deemed worthy of appellate review."). In Blackman, in which the district court had granted a COA without identifying the issue or issues on which it was granted, we remanded for the required specification.

9

In the present case, the problem discussed in <u>Blackman</u> is exacerbated by the fact that the district court, in denying Matthews's § 2255 motion, did not provide any explanation for its denial except to state that it adopted "all of the reasons set forth in the Government's memorandum" in opposition to the motion, July 2009 Order at 2--and the fact that the reasons advanced by the government for the rejection of one of Matthews's complaints about trial counsel were plainly flawed (<u>see</u> Part II.B. below).

Nonetheless, because we do not view the district court's failure to comply with the specificity requirement as a flaw that is jurisdictional, given (a) that we have ruled that a "certificate of appealability issued without meeting the 'substantial showing of the denial of a constitutional right' requirement nonetheless suffices to confer appellate jurisdiction," <u>Soto</u>, 185 F.3d at 52 (quoting § 2253(c)(2)), and (b) that this Court itself is authorized to grant a certificate of appealability, we proceed to address the issue that this Court would have viewed as facially appropriate for the issuance of a COA. If the district court in fact viewed Matthews as having met the substantial-showing-of-the-denial-of-a-constitutional-right standard with respect to any other issue, that court will be free on remand to identify such issue or issues and to grant a new COA following the proceedings on remand.

B.  <u>The Biased-Investigator IAC Claim</u>

Section 2255 provides, <u>inter alia</u>, that a federal prisoner claiming that he was imprisoned in violation of federal law "may move the court which imposed . . . sentence [on him] to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). It also provides that

> [u]nless the motion and the files and records of the case **conclusively** show that the prisoner **is entitled to no relief**, the court shall cause notice

10

> thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

Id. § 2255(b) (emphases added).

"We review the district court's denial of a hearing under 28 U.S.C. § 2255 for abuse of discretion." Chang v. United States, 250 F.3d 79, 82 (2d Cir. 2001). "A district court abuses its discretion when its decision rests on an error of law or a clearly erroneous factual finding, or when its decision, though not necessarily the product of legal error or a clearly erroneous finding of fact, cannot be located within the range of permissible decisions." United States v. Gonzalez, 647 F.3d 41, 57 (2d Cir. 2011). And "[w]hile the district court has wide discretion in developing the record it will use to determine a habeas petition, that discretion does not extend to summary dismissals of petitions presenting facially valid claims and off-the-record interactions with trial counsel." Pham v. United States, 317 F.3d 178, 185 (2d Cir. 2003).

In assessing a claim that the habeas petitioner has been denied the effective assistance of counsel to which he is entitled under the Sixth Amendment, the court applies the standard established by Strickland v. Washington, 466 U.S. 668. Under that standard, the petitioner

> must meet a two-pronged test: (1) he "must show that counsel's performance was deficient," 466 U.S. at 687, so deficient that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," id. at 690; and (2) he must show "that the deficient performance prejudiced the defense," id. at 687, in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.

Bennett v. United States, 663 F.3d 71, 84 (2d Cir. 2011). With respect to the performance prong, the Strickland Court noted that

> counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any

11

ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

466 U.S. at 691; see id. at 688 ("the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances").

Matthews's principal claim--which we refer to as the biased-investigator IAC claim-- was that his trial counsel rendered ineffective assistance by insisting on using Haumann as the investigator to assist in the preparation of Matthews's defense against the 2006 charges despite knowing that Haumann and Matthews had had a relationship that was surely adversarial. The government opposed this claim on the grounds (a) that Matthews could not satisfy the performance prong of Strickland because his allegations as to the conflict between himself and the investigator-- based on the fact that "the investigator . . . arrested Matthews 27 years ago when the investigator was a Syracuse police officer" (Government Memorandum at 6)--were "general," "cursory," "vague," and "unsubstantiated" (id. at 8), and "ma[de] no specific allegation evidencing a conflict" (id. at 6); and (b) that Matthews could not satisfy Strickland's requirement that he show that use of the allegedly biased investigator caused him prejudice because

> [i]n an order issued after trial denying Matthews' first request to have his attorney replaced due to ineffective assistance, the Court stated:

>> [T]he evidence of defendant's guilt was overwhelming. Even if defendant's present complaints about his attorney are true, it would have made no difference in the outcome of the trial.

> Doc. Number 58.

(Government Memorandum at 9.)

These arguments by the government did not warrant the denial of Matthews's biased-investigator IAC claim without a hearing. Looking first at the basis for the government's argument

12

for lack of prejudice, we note that the government acknowledges in its brief on this appeal that the district court's statement that the evidence was overwhelming was made in the context of a motion seeking new counsel but "not in response to a motion alleging ineffective assistance of counsel" (Government brief on appeal at 21 n.13). Further, "Doc. Number 58," in which the district court described the evidence against Matthews as overwhelming, was an order entered by the district court on October 3, 2006. So far as the record before us reveals, Matthews did not introduce his biased-investigator IAC claim until November 22, 2006. In sum, the court's statement that the evidence against Matthews was overwhelming does not appear to have been part of a Strickland analysis, much less one undertaken in the context of the claim that is at issue here.

Further, as to the performance prong of the Strickland standard, Matthews's stated basis for his claim that Haumann would have a negative interest in assisting Matthews's defense was anything but vague, unsubstantiated, or unspecific. His § 2255 motion alleged that Haumann, when he was deputy chief of police in Syracuse, had, inter alia, arrested, assaulted, and racially demeaned Matthews, when Matthews was charged with the attempted murder of a police officer. That arrest was a subject of Matthews's November 2006 IAC motion, and his supporting affirmation, made under penalty of perjury (see Matthews November 7, 2006 Affirmation)--which the government has reproduced in its appendix on this appeal--appended as Exhibit B a photocopy of a December 1982 newspaper article headlined "Released Shooting Suspect Nabbed in Early Morning Stakeout." The article reported, inter alia, that Matthews had been arrested some three months earlier on charges of armed robbery and the attempted murder of a police officer who tried to stop him after the robbery, that Matthews had then been released from custody inadvertently and become a fugitive, and that he had just been recaptured. Three months of Syracuse police stakeouts--and a manhunt joined by "[t]he

13

FBI, state police, and several out-of-state metropolitan police departments"--had followed Matthews's inadvertent release. Just after 1 a.m. in the final stakeout, Matthews ("disguised in a wig and granny glasses") was "tackled," "pull[ed] . . . to the ground," and "taken into custody" by two policemen, including "Deputy Police Chief Richard L. Haumann." The article stated that "[t]he arrest capped what Police Chief Thomas J. Sardino called 'one of the most extensive manhunts in the City's history.'"

Although a conflict of interest or an inferable bias on the part of a person on whom the attorney relies for information in formulating a defense does not mean that the attorney himself has a conflict of interest, the record plainly reveals a plausible basis for an inference that Haumann could reasonably be expected to bear animus against Matthews. Matthews's attorney's reliance on such a person while knowing of that person's presumable bias would call into question whether counsel had performed his "duty to make reasonable investigations," Strickland, 466 U.S. at 691 (emphasis added).

The government argues that "Matthews fails to present any evidence that, if a conflict existed between himself and the investigator, that his counsel was aware of it." (Government brief on appeal at 21.) A handwritten note at the bottom of the Matthews Affirmation's Exhibit B included the statement that "Counsel was advised that there would be a conflict of interest in having this investigator (Richard L. Haumman [sic]) work on my case, racial remarks during the arrest by this investigator who was a deputy police chief during this arrest of defendant." Although the court has discretion as to the methods it will use to develop the record needed to rule on a habeas petition, we do not see that it could properly summarily resolve against Matthews the matter of whether his off-the-record communications with Greenwald had made Greenwald aware of the potential bias of Haumann.

14

In sum, the government's responses to Matthews's § 2255 motion were inadequate to show that his biased-investigator IAC claim could not meet the Strickland standard, and the district court's rejection of this claim by adopting the government's arguments was likewise inadequate.

We conclude that Matthews should have an opportunity to show what an unbiased investigator could have unearthed in order to create a reasonable probability that the result of the trial would have been different.

CONCLUSION

For the above reasons, we vacate so much of the July 2009 Order as summarily rejected Matthews's biased-investigator IAC claim and we remand to the district court for further proceedings on this claim, including such proceedings as may be necessary for the court to determine whether to appoint counsel to represent Matthews in connection with this claim.

Matthews has filed a pro se supplemental brief on appeal, arguing the merits of other issues as well. We decline to address issues other than the biased-investigator IAC claim at this time. If the district court intended its December 2009 Order to grant a COA with respect to any other issue, the court should, following the proceedings on remand, grant a new COA identifying such issue or issues.